UNITED STATES *v.* HOUGHTON.

(*District Court, D. New Jersey.* October 20, 1882.)

1. CRIMES—FALSE MAKING OF PUBLIC RECORD—ELEMENTS OF OFFENSE.

In order to a conviction of the offense defined in section 5418 of the Revised Statutes, the jury must be satisfied beyond a reasonable doubt (1) that the time and pay roll described in the indictment was a false, forged, and counterfeit writing; (2) that the same was transmitted to the proper officer of the government by the defendant; and (3) that the false character of the writing was known by the defendant at the time of the sending, and that it was sent with the intent to defraud the United States.

2. SAME—DEFENDANT AS WITNESS—WEIGHT OF TESTIMONY.

The laws of the United States permit a person charged with crime or misdemeanor to be a witness in his own behalf, and such weight is to be given to his testimony as, under all the circumstances, it is fairly entitled to.

3. SAME—GUILTY KNOWLEDGE—PRESUMPTION.

In criminal as well as civil affairs every one is presumed to know everything that he can learn upon inquiry, when he has facts in his possession which suggest the inquiry, and this knowledge must be affirmatively shown by the government

4. SAME—EVIDENCE OF.

Proof of other acts, which have no connection with the principal transaction, is admissable in cases where the knowledge or intent of the party is a material fact.

5. SAME—A QUESTION OF FACT.

> The question of guilty knowledge of the defendant in a criminal case is a question of fact for the jury.

6. SAME—FALSE CERTIFICATES OF SERVICES.

> It is not lawful for an official to accept an office and then use false means and methods to obtain money for carrying it on, as by certifying charges for boat service, the expenses of janitor's fees, carriage hire, ice, gas, etc., in order to obtain money from one department for services which had been rendered in another, and for the payment of which the government has made no provision.

7. SAME—INTENT AND ACT MUST UNITE.

> No man is to be punished as a criminal unless his intent is wrong, and such wrong intent must be followed by a wicked act to give it force and effect.

8. SAME—INTENTION INFERRED FROM ACT.

> If one intends to do what he is conscious the law forbids, no other evil intent need be shown. In such case the law infers the intent to defraud from the act, and guilty knowledge of the false character of the pay-roll, when transmitted, is sufficient to raise the inference of a fraudulent intent.

NIXON, D. J., (*charging jury*.) While the counsel of the respective parties have been engaged with so much zeal, labor, and ability in discussing before you the facts of this case, I have taken occasion to make note of certain suggestions in regard to the law, which I will now submit to you, after which the entire responsibility of its decision must rest with you.

The case lies within a narrow compass—much narrower than one would suppose when he considers the wide range which the testimony has taken.

Section 5418 of the Revised Statutes of the United States enacts "that every person who * * * transmits to or presents at the office of any officer of the United States any false, forged, altered, or counterfeited bid, proposal, guaranty, official bond, public record, affidavit, or other writing, knowing the same to be false, forged, altered, or counterfeited, for the purpose of defrauding the United States," shall be deemed guilty of a misdemeanor and punished.

The defendant is the collector of customs for the district of Perth Amboy, and is charged in the indictment with transmitting to and presenting at the office of the secretary of the treasury a false, forged, and counterfeited writing, to-wit, "a time and pay roll of persons employed in the collection of the revenue from customs in the district of Perth Amboy, from September 1 to September 30, 1879, containing a certain affidavit, purporting to have been taken by nine several boatmen, therein mentioned, before one J. Kearney Smith, he (the collector) then and there knowing the same to be false, forged and counterfeited, for the purpose of defrauding the United

States, by causing the false, forged, and counterfeited time and pay roll to be accepted and received by the secretary of the treasury as a good and sufficient voucher for the several sums therein mentioned, and causing the said sums to be allowed and credited to him on the settlement of his accounts as collector, respecting the disbursement of moneys intrusted to him for the disbursement in payment of boatmen employed by him as such collector. Before the United States can properly ask for a conviction of the defendant, you must be satisfied by the evidence, beyond a reasonable doubt, (1) that the time and pay roll described in the indictment was a false, forged, and counterfeited writing; (2) that the same was transmitted to the proper officer of the government by the defendant; and (3) that the false character of the writing was known by the defendant at the time of the sending, and that it was sent with the intent to defraud the United States.

The first and second of these propositions have not been seriously contested, and the case turns upon the last, to-wit, the knowledge of the defendant as to the true character of the writing, and his intent to defraud the government. The responsibility of deciding the case is on you. It is the duty of the court to instruct you as to the law, but you must determine the facts, and your verdict must be based upon your honest judgment of the facts. You will remember, at the outset, that the defendant can only be convicted, if at all, upon the time and pay roll of the month of September, 1879. The indictment charges that one only to be false and fraudulent, whatever may be the proof in regard to others. The other pay-rolls were either brought into the case by the defendant to show the methods by which the business of the collector's office was conducted, or were admitted by the court, at the instance of the prosecution, as tending to aid the jury in reaching a correct conclusion on the single question of the knowledge of the defendant of the true character of the one on which the indictment is founded.

The laws of the United States permit a person indicted for a crime or misdemeanor to be sworn in his own behalf. The defendant in this case has been placed upon the witness stand, and it is your duty to give such weight to his testimony as you think, under all the circumstances, it is fairly entitled to. He substantially admits the false and forged character of the pay-rolls for the boat service, and especially the one for the month of September, 1879, and it may be said that he acknowledges that he transmitted the same to the proper officer in Washington. His statement is that he certified to the cor-

rectness of all of them, and that sometimes he forwarded them himself, and sometimes they were handed back to the deputy collector to be transmitted. But he was chargeable, as collector, with the performance of the act, and in law it is the same whether he sends it personally or through his deputy.

The only questions left are in regard to the knowledge of the defendant of the falsity and forgery of the pay-roll, and the intent for which it was sent.

1. In regard to his knowledge. Did he know, at the time of his certification of its truth and its transmission, that it was untrue, and false and fraudulent? What is legal knowledge of a fact? There is great misapprehension in the popular mind on this subject. There seems to be a prevalent notion that no one is chargeable with more knowledge than he chooses to have; that he is permitted to close his eyes, when he pleases, upon all sources of information, and then excuse his ignorance by saying that he does not see anything. In criminal as well as civil affairs every man is presumed to know everything that he can learn upon inquiry, when he has facts in his possession which suggest the inquiry. This knowledge of the defendant must be affirmatively shown by the government. Except in the case of confession it is generally impossible to make it out by direct evidence, and can only be inferred from overt acts. Wharton, in discussing the subject, says that if the knowledge cannot be implied from the facts and circumstances which, together with it, constitute the offense, other acts of the defendant, from which it can be implied to the satisfaction of the jury, must be proved at the trial. It was on this principle that other pay-rolls were admitted in the case, and evidence was received tending to prove their false or fraudulent character. As I have before suggested, the defendant on this indictment cannot be convicted on their falsity, but the jury have the right to infer his knowledge of the falsity of the pay-roll on which he has been indicted, if they are persuaded by the testimony that he had knowledge of the false character of the others. It is admissible to prove other acts which have no connection with the principal transaction, in those cases where the knowledge or intent of the party is a material fact; as, for instance, in an indictment for knowingly uttering a forged document, proof of the possession, or of the prior or subsequent utterance of other false documents, though of a different description, is admitted as material to the question of guilty knowledge or intent. 1 Greenl. Ev. § 53.

The defendant, on the witness stand, denied any knowledge of the falsity, not only of the pay-roll on which he was indicted, but of all the others. Incidentally admitting their false character, he excused himself from knowledge of the fact by stating that all the matters connected with the boat service of his office were left in the hands of his deputy, J. Kearney Smith, and that if any fraud had been committed he alone was responsible. The deputy, Mr. Smith, denied this statement, and testified that the defendant had full knowledge of the manner in which the pay-rolls were made up at the time that he certified to their truth; and to the necessity of the service alleged to have been performed. I regard this as the vital question in the cause, and you, gentlemen, must find the truth, if you can, out of the conflicting testimony. In order to do this, you will carefully consider the evidence which has been produced,—on the one side, to prove to you the defendant's knowledge of the falsity of the pay-roll, and on the other, to satisfy you that he was ignorant of its true character. I express no opinion on the subject, and leave the question for your determination.

Sometimes the court deems it important to marshal the facts specifically on the one side and the other to enable the jury more clearly to reach a correct conclusion. I shall not do it in this case, because I have left the very able counsel, representing both sides, ample time and latitude in summing up the evidence, and your patient attention is the best security and guaranty that it is not necessary for me to detain you by a recapitulation. What, then, is your honest and impartial judgment as to the defendant's knowledge? Has the government shown to you facts respecting his conduct in the business of his office, or specific acts by him in regard to the other pay-rolls from which you can fairly infer his knowledge of the falsity of this pay-roll?

In this connection there is one position which was not very openly taken, but has been more than once gently suggested, by the counsel for the defendant, to which I ought to advert, to-wit, that as no provision was made by the department at Washington for the payment of certain expenses of the office, deemed necessary by the collector, such as janitor's fees, carriage hire, ice, gas, sprinkling the streets, etc., the names of persons doing such work, but performing no boat service, were placed upon the pay-rolls, and properly paid from the money furnished alone for the boat service. My charge to you here is: that if the defendant knew when he transmitted the pay-roll to

Washington that it contained charges for boat service which had not been rendered, then he had knowledge of its false character; unless, indeed, you are satisfied that such charges were made with the approval of the proper department of the government. He cannot excuse himself by saying that the work was done somewhere else in the office, and that he charged it here because the department would not make allowances for payment out of any other money of the government.

It may be true, as the learned counsel of the defendant suggested, that the United States is a hard task-master; that it often requires unreasonable things from its officials. But whether that be so or not, it is not lawful for an official to accept of an office, and then use false means and methods to obtain money for carrying it on. He may resign if the government is unjust or exacting, but he cannot certify to falsehoods in order to obtain money from one department for services which had been rendered in another, and for the payment of which the government has made no provision. Unless you are satisfied beyond a reasonable doubt that the defendant was aware of the falsity of the pay-roll when he transmitted it, the case ends, and the defendant is entitled to your acquittal. The indictment charges, and the law requires the government to prove, a guilty knowledge of its character before there can be a conviction.

2. But if you are so satisfied, then you will proceed to the consideration of the only remaining inquiry, whether it was sent with the intent to defraud the government. Not much need be said upon this point. It is a fundamental doctrine of the law that no man is to be punished as a criminal unless his intent is wrong, and such wrong intent must, ordinarily, be followed by a wicked act—the mere intention not injuring any one, unless developed into some act to give it force and effect. Thus, a man may determine in his own mind to rob or defraud his fellow on some favorable opportunity. Such an intent, deliberately formed, renders him morally guilty, but he does not become legally liable until he takes steps to carry his intent into execution. It is not necessary, in the present case, for the prosecution to prove that the government has been actually defrauded. The indictment charges only an intent to defraud. The rule here is, as stated by the best authorities, that if a man intends to do what he is conscious the law, which every one is presumed to know, forbids, there need not be any other evil intent shown. In such a case the law infers the intent to defraud from the act. If you are convinced that the defendant knew the false character of the pay-

roll when he transmitted it to the government, you are not obliged to look further than that to find a fraudulent intent on the part of the defendant.

With these remarks I leave the case with you. If you have any reasonable doubt, after carefully considering the testimony, about the guilt of the defendant, give him the benefit of the doubt and acquit him. If you have not, do not let the sympathy which you and all of us feel for the defendant in these trying circumstances deter you from fearlessly and honestly discharging your duty; but let your verdict be such that the government and all other officials may learn that in this court punishment follows the transgression of the law.

The jury found a verdict of guilty, with a recommendation of mercy.

See *U. S.* v. *Wentworth*, 11 FED. REP. 52.