YODER *v.* STATE OF INDIANA
[No. 26,318.   Filed March 13, 1935.]

*Robert E. Proctor, Alen R. Sawyer,* and *Thomas V. Hopper,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *Joseph P. Mc-Namara,* Deputy Attorney-General, for appellee.

HUGHES, J.—This is an appeal from the Elkhart Superior Court. The appellant was charged by affidavit, in that court, in four counts with larceny and embezzlement. He was convicted of embezzlement as charged in the third count.

The assignment of errors is as follows:

(1) That the court erred in overruling appellant's motion to quash the affidavit.

(2) That the court erred in overruling appellant's motion for a new trial.

More than one hundred reasons are assigned in appellant's motion for a new trial, but, under points, authorities, and agreement, only a few of the many reasons are relied upon and therefore all others are waived. The reasons relied upon are as follows:

(1) That the court erred in refusing to give to the jury instructions numbered 4, 8, 10, 12, and 19, tendered by the defendant.

(2) That the court erred in overruling appellant's objection to the introduction in evidence of all exhibits of the State from 1 to 42 inclusive, except State's Exhibits 2, 3, 4, 5, 17, 20, 23, 24, 25, 26, and 36.

(3) That the court erred in overruling appellant's

motion to quash the affidavit. Under this proposition the only count discussed is the third one upon which the appellant was convicted.

(4) The court erred in overruling appellant's motion for a new trial for the reason that the verdict was contrary to law and not sustained by sufficient evidence.

(5) The court erred in giving to the jury of its own motion instructions Numbers 7 and 16.

The third count of the affidavit is as follows:

### Third Count

"Orlo C. Beard swears that on or about the 12th day of November, 1930, at the county of Elkhart and State of Indiana, one Frank E. Yoder was then and there an officer, to-wit: the cashier of THE STATE BANK OF GOSHEN, a banking corporation duly organized under the laws of the State of Indiana, and was employed by said bank as such cashier, which said THE STATE BANK OF GOSHEN, was then and there the guardian of one Mary A. Yoder, aged and infirm, by appointment of the Elkhart Circuit Court, and as such officer and by virtue of being such officer and of such employment did have access to, control and possession of certain money, to the possession of which the said bank as such guardian was entitled, the said Frank E. Yoder did then and there, while such officer and in such employment unlawfully and feloniously take, purloin, secrete and appropriate to his own use and to the use of Frank E. Yoder and Clyde J. Castetter, a copartnership, doing business under the firm name and style of Service Oil Company, the sum of fifteen hundred sixty-nine and 67/100 ($1569.67) dollars which was then and there deposited with and held by said bank as such guardian, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Indiana."

It is contended that: "The third count of the affidavit does not allege that Frank E. Yoder, the appellant did, at the time of the alleged embezzlement charged to have been consummated, act as an officer of the STATE

BANK OF GOSHEN, and the affidavit does not allege that appellant, Frank E. Yoder, had access to or control and possession of the certain money on or about the 12th day of November, 1930, and that the third count of the affidavit does not allege that on the 12th day of November, 1930, the said bank as such guardian, was entitled to the possession and control of certain money and has access thereto."

The appellant is certainly wrong as to the foregoing contention. The facts as contended for are specifically alleged as we read the language of the count. It is also contended by the appellant that the words "then and there" are omitted in two places in the count which makes it uncertain. The time and venue had both been stated in the count once and it was not necessary to restate them. Section 2225, Burns 1926, §9-1127, Burns 1933, §2206, Baldwin's 1934. *Turpin* v. *State* (1881), 80 Ind. 148; *Buntin* v. *State* (1879), 68 Ind. 38.

It appears from the evidence that the State Bank of Goshen was appointed guardian of Mary A. Yoder, who had been adjudged infirm and incapable of managing her estate, on September 26, 1930; that the inventory and appraisement showed personal property to the value of $3,874.56; that on November 12, 1930, the appellant, Frank Yoder, was cashier of the State Bank of Goshen and had been for some period of time, and was the trust officer of the bank and handled the guardianship account of Mary A. Yoder; that on October 11, 1930, Mary A. Yoder's savings account of $3913.00 was changed to a checking account; that he, Yoder, purchased two bonds known as General Vending Bonds for $430.33, and charged them to the estate of Mary A. Yoder in the amount of $2,000.00 without any order of court. Yoder transferred $1,500.00 of the $2,000.00 to

the credit of the Service Oil Company and deposited the balance, $69.67 to his own account.

It is seen that he charged the guardianship of Mary A. Yoder $2,000.00 for bonds which cost him only $430.33, leaving a profit of $1569.17. And yet he claims he honestly believed he had the right to make the sale of bonds to the guardian at a profit to himself, and therefore he would not be guilty of embezzlement as charged in the third count of the affidavit. He was the cashier of the bank which was the guardian of Mary A. Yoder; he was also the trust officer of the bank and had this guardianship under under his supervision. It was his duty to protect and of years as a trust officer and had had several estates under his supervisioon. It was his duty to protect and preserve, and not to exploit the estate of the bank's ward. The law will not permit the guardian to profit at the expense of his ward's estate, and neither will it permit the agent or employee of the guardian to do so. The State Bank of Goshen was the guardian; it can only act through its officers, and the appellant was an officer whose duty it was to protect and preserve the guardianship estate.

One occupying a fiduciary relation can not take advantage of this relationship. This is especially true where the relationship is that of guardian and ward. The law will not permit an unconscionable advantage to be taken by the guardian against his ward, and the law will not permit him to make a profit at the expense of his ward and retain the profit.

*Teegarden* v. *Lewis, Admr.* (1895), 145 Ind. 98, 40 N. E. 1047, 44 N. E. 9; *Brown* v. *Rickets* (1820), 4 Johns Ch. 303, 8 Am. Dec. 567; *Taylor* v. *Calvert* (1894), 138 Ind. 67, 37 N. E. 531.

It is a general rule that where one person has the

power of disposition of the property of another without the consent of that other he shall not be allowed to become personally interested in it himself, and this without regard to any question of fairness in the immediate transaction, for he shall not be allowed to occupy a position where self interest would tempt a betrayal of duty. *Chicago Hansom Cab Co.* v. *Yerkes* (1892), 141 Ill. 320, 30 N. E. 667, 33 Amer. S. R. 315.

> "The law is well settled that a trustee can not without a breach of the trust deal with its subject matter in such a manner as to make a profit for his own benefit. It requires no very keen moral perception to recognize the obvious justice of this universal rule of law, of justice and of morality." *Dixmoor Golf Club* v. *Evans* (1927), 325 Ill. 612, 615, 156 N. E. 785.

It is contented by appellant that the court erred in refusing to give to the jury, instructions numbered 4, 8, 10, 12, and 19, tendered by appellant. We do not think the court erred in refusing to give instructions numbered 4 and 12 requested by appellant, when instructions numbered 7, 10, 11, and 16 given by the court are taken into consideration. These instructions substantially cover instructions numbered 4 and 12. Instructions 8 and 19 requested by appellant in substance are the same. Instruction number 8 is as follows:

> "The court instructs you that if you should find from the evidence beyond a reasonable doubt that the defendant, at Elkhart County, State of Indiana, on or about the 12th day of November, 1930, did as an officer and employee of The State Bank of Goshen, purloin and appropriate to his own use, or to the use of Frank E. Yoder and Clyde J. Castetter, a copartnership, doing business under the firm name and style of 'Service Oil Company,' money in the sum of fifteen hundred sixty-nine and 67/100 ($1569.67) dollars, or some part thereof, as charged in the third count of the affidavit, it would be incumbent upon the state to convince you by

evidence beyond a reasonable doubt that the transaction, as alleged in the third count of the affidavit, was done with a felonious and fraudulent intent. Therefore, if it appears from the evidence that the defendant at such time and place believed that he had a right to make said transaction and profit thereby, or believed, under the terms of employment existing between him and The State Bank of Goshen, he had a right to retain said money as his profit and for his compensation for the bonds sold by him to said bank as guardian of Mary A. Yoder, then he would not be guilty of embezzlement, even though it should turn out in law and fact that he had no right to profit from said transaction, and if you find that the defendant retained the profits of said transaction and kept said money, or credited said money to Frank E. Yoder and Clyde J. Castetter, a copartnership, doing business under the firm name and style of 'Service Oil Company' in Elkhart County, State of Indiana, and if there is a reasonable doubt in your mind as to whether the defendant believed he had a right so to do, then it is your duty to find the defendant not guilty."

It is the contention of appellant that if he honestly believed he had a right to make the sale of bonds to the guardian and at a profit to himself, even though it turned out that in truth and in fact he had no right to profit thereby, he would not be guilty of embezzlement, and that the court should so have instructed.

We can not believe this is a true statement of the law when applied to the facts in the instant case. The State Bank of Goshen was the guardian of Mary Yoder; the appellant was the cashier of said bank and its trust officer and had the supervision of estates and guardianships. He was presumed to know the law and therefore knew that he could not deal with the guardianship in such a manner as to make a profit out of the trust for his own use and benefit. And yet he

bought two bonds for the sum of $430.33 and sold them to the guardianship estate for the sum of $2000.00, thereby making a profit of $1569.67. In justification for this he says that he honestly thought he had a right to do this and therefore is not guilty of embezzlement. We can not conceive this to be the law.

If one intentionally does that which he knows the law forbids, he can not be heard to say that he thought he had the right to do it, and thereby escape the consequences of his act. How can the appellant in the instant case say that he thought he had the right to buy the bonds for $430.33 and sell them to the guardianship for $2000.00 and take the difference as his profit? How can he say he honestly believed he had the right to do this?

In the case of *Marmont* v. *State* (1874), 48 Ind. 21, p. 31, the court lays down the following rules:

(1) That every man is presumed to know the laws of the country in which he dwells; or in which, if residing abroad, he transacts business.

(2) That ignorance of the law excuses no man.

(3) That every person is presumed to intend the natural and reasonable consequences of his acts, and when he violates a law the presumption arises that it was wilfully done.

(4) That ignorance or mistake in point of fact, where the person has been misled without fault or carelessness on his part, and where he believes, and has reasonable ground to believe a certain state of facts to exist is excused for acts honestly done while so misled.

In the instant case there is no pretense that the appellant was misled in point of fact and he was presumed to know the law which he deliberately violated. Afterwards he can not be heard to say he thought he had the right to do what he did.

"Where a man does an act with intent which the

law forbids, it will not avail him that he also intended an ultimate good." *Phillips* v. *State* (1867), 29 Texas 226.

And where one intends to do what he is conscious the law forbids, no other evil intent need be shown. *U. S.* v. *Houghton* (1882), 14 Fed. 544. And where one does an act with intent and he knows the law forbids him to do the act he can not avail himself by saying he honestly believed he had the right to do the act forbidden. If a cashier of a bank and trust officer, the bank being guardian of a ward, can use the funds of the guardianship as used in the instant case, under the theory that he thought he had the right to so use them, then every such guardianship or trust in the hands of a bank would be at the mercy of the officers and employees of the bank. Suppose that the appellant had sold to the bank the bonds in question which cost $430.33 for $2000 and had taken from the funds of the bank $1569.67 as his profit, could he be heard to say in defense that he honestly believed he had the right to do this? We think not. If there is a wilful and known wrongful taking, use, and appropriation by one of money belonging to another the criminality of the act is not removed by saying that he honestly believed he had the right to take it. *Fowler* v. *Wallace* (1891), 131 Ind. 347, 357, 31 N. E. 53. In the case of *Fowler* v. *Wallace, supra,* it is said:

"The authorities are well agreed upon the proposition that the intention to restore, repay or replace money or property wrongfully and unlawfully appropriated does not take from the act its criminal character."

If one who wrongfully and unlawfully appropriates property with an honest intention to restore the same can not avail himself of his honest intentions, neither can one who knowingly, wrongfully, and unlawfully ap-

propriates property avail himself by saying he honestly believed he had the right to appropriate it.

Under the undisputed facts in the instant case there is no room for the theory that the defendant honestly believed he had the right to do what he did and he can not urge in justification of his conduct that he did it in good faith. He knew that the bank was the guardian of Mary Yoder and that he was the cashier and officer of the bank and that it was his duty to protect and preserve the money belonging to the ward. There is nothing in the evidence that tends to show he acted innocently, but on the other hand the evidence shows, in our judgment, that he is guilty as charged in the third .count beyond a reasonable doubt. Instructions given or refused must be considered in the light of the evidence given in the case, and when thus considered we are of the opinion that there was no error committed in refusing to give instructions numbered 8, 10, and 19 tendered by the appellant.

Appellant cites the cases of *Ridge* v. *State* (1923), 192 Ind. 639, 644, 137 N. E. 758; *Beaty* v. *State* (1882), 82 Ind. 228, and *Baugh* v. *State* (1929), 200 Ind. 585, 165 N. E. 434, in support of instruction number 8 which is evidently based upon instruction number 14 tendered in the case of *Ridge* v. *State, supra,* and refused, and the refusal thereof was held to be erroneous. We must remember, however, as stated above, that instructions given or refused must be considered in the light of the evidence and facts in the particular case. Each of the above cases are clearly distinguishable from the instant case and are not controlling here.

The appellant contends that instructions seven and sixteen given by the court are erroneous on the theory that they invade the province of the jury. Instruction number seven is as follows:

"I instruct you that if you find with the degree of certainty heretofore stated that the defendant, Frank E. Yoder, on or about the 12th day of November, 1930, while in the employ of the State Bank of Goshen as an officer, to-wit, the cashier of said bank, and who by virtue of his employment did have access to, control or possession of the property of the State Bank of Goshen as guardian for Mary A. Yoder, aged and infirm, as described in the third count of the affidavit to the possession or ownership of which the State Bank of Goshen was entitled as guardian of Mary A. Yoder and while in such employment said defendant did feloniously take, purloin, secrete or appropriate certain property so described to his own use or the use of the Service Oil Company (in which he was a partner), then he would be guilty of embezzlement as charged in the third count of the affidavit." Our parenthesis.

The appellant insists that instruction number seven assumes a partnership was proven as alleged in the third count of the affidavit. If this were true, it would not make the particular instruction bad.

If, as the affidavit sets out, the "said defendant did feloniously take, purloin, secrete or appropriate certain property so described to his own use or the use of the Service Oil Company, in which he was a partner, then he would be guilty of embezzlement . . . " If he appropriated it to the use of the Service Oil Company, it would make no difference whether he was a partner in it or not. Therefore the words "in which he was a partner" are surplusage and of no practical effect as far as the charge is concerned. Section 2470, Burns 1926, under which the appellant was prosecuted, specifically provides that if one appropriates property to his own use or *to the use of others* he is guilty of embezzlement. So if in the instant case the appellant appropriated the money to the use of the Service Oil Company it would make no difference whether he was or was not

a partner therein. We do not think the instruction is erroneous.

It is further contended by the appellant that instruction number sixteen given by the court is erroneous.

■   Such instruction is as follows:

"If you and each of you are satisfied beyond a reasonable doubt that the defendant was an officer or employee of the State Bank of Goshen, as charged in the third and fourth count of the affidavit, and did on or about the time alleged in the third and fourth count of the affidavit, by virtue of his being an officer or employee of said bank, have possession of fifteen hundred sixty-nine and 67/100 ($1569.67) dollars to the possession of which the said bank as guardian of Mary A. Yoder or as a bank was then and there entitled, then the state must prove beyond a reasonable doubt that the defendant did then and there unlawfully and feloniously take, purloin, secrete and appropriate to his own use said money, or a part thereof, and an exchange of credits or checks would not be sufficient, but it must be proved beyond a reasonable doubt that the defendant or Clyde J. Castetter and Frank E. Yoder, (copartners, doing business under the firm name and style of 'Service Oil Company') actually received and appropriated money as charged in the third and fourth counts of the affidavit."

The appellant contends that instruction number 16 invaded the province of the jury. The last part of the instruction says: "but it must be proved beyond a reasonable doubt that the defendant or Clyde J. Castetter and Frank E. Yoder, copartners, doing business under the firm name and style of 'Service Oil Company' actually received and appropriated money as charged in the third and fourth counts of the affidavit." The language is equivalent to saying, "but it must be proved beyond a reasonable doubt that . . . Clyde J. Castetter and Frank E. Yoder, copartners, doing business under the firm name and style of "Service Oil Company" ac-

tually received and appropriated money as charged in the third and fourth counts of the affidavit. We do not think the objection to this instruction is tenable. It is charged in the third and fourth counts of the affidavit that the defendant appropriated the money to "his own use and the use of Frank E. Yoder and Clyde J. Castetter, a copartnership, doing business under the firm and style name of Service Oil Company."

We think the fair construction to be placed on this instruction is that the jury must find beyond a reasonable doubt that the defendant himself, or as a partner with Clyde J. Castetter in the name of the Service Oil Company received and appropriated the money. We do not think this instruction invaded the province of the jury.

Complaint is made of the introduction in evidence of all exhibits of the State from 1 to 42 inclusive, except exhibits 2, 3, 4, 5, 17, 20, 23, 24, 25, 26, and 27. We have carefully examined all of the exhibits and do not think error was committed in the introduction of the same. Exhibit 1 referred to the charter of the State Bank of Goshen, and practically all others were introduced for the purpose of tracing the transaction of credit and for the ultimate purpose of showing money received and taken by the appellant.

It is further contended by appellant that there was no evidence offered by the State to prove the embezzlement of any money by the appellant, and only evidence of the transactions of credit were introduced by the State. That under these circumstances there was a fatal variance between the affidavit and the evidence and that proof of embezzlement of credits or checks does not sustain an allegation of the embezzlement of money. We can not assent to this contention.

The appellant cites several authorities upon this proposition and one of them is 20 C. J. 478. We think the proposition of law is properly stated in this work. It is said:

"Thus, under an indictment or information for embezzling money it is not permissible to prove the embezzlement of other property, such as a check. But if the check, or other evidence of indebtedness, was merely the means by which the money alleged to have been embezzled was procured, there is no variance."

In the instant case the appellant drew a check on the funds of the State Bank of Goshen in the sum of $2000.00; then transferred $1500.00 of this amount to the account of the Service Oil Company; he then reimbursed himself to the extent of $430.33, the price paid for the bonds to his credit. The account of the Service Oil Company was a checking account and after the $1500.00 was deposited to its account the evidence shows that checks were drawn upon said account. And the account of appellant was a checking account, and the evidence shows that after the deposit of $69.67 to his account, checks were drawn on said account. So it can not be successfully maintained that only credits and not money were dealt with. When appellant transferred the $1500.00 to the Service Oil Company he was transferring money, and although done by check, he was in effect withdrawing $1500.00 in money and depositing it to the Service Oil Company, and the same is true as to the $69.67.

In the case of State v. Disbrow (1906), 130 Ia. 19, 106 N. W. 263, the defendant was charged with the embezzlement of money of his ward. The evidence showed that the guardian received his ward's money and invested it, receiving a note which he converted to his own use. The court held there was no variance.

The case of *People* v. *Crane* (1917), (Cal.), 168 Pac. 377, 380, is in point in the instant case. It was there claimed there was a variance between the information and the proof in that the information charged the embezzlement of money while the evidence showed that the defendant did not receive money, but a bank draft. The court said:

> "It is true that the defendant in the first instance received a draft for the money in Monterey County; but it is also true, as has been seen, that he deposited the draft in the name of his wife in a bank at Stockton immediately after he received it, and thus it became a part of his account in said bank, available for his and his wife's purposes. In substantial effect, it became cash or money the moment he deposited the draft in his wife's name, for it was kept there subject to be paid out on the checks of either himself or wife."

So, in the instant case, as soon as the transfer or deposit was made to the account of the Service Oil Company it became cash or money subject to be paid out on orders of the Service Oil Company. Many other authorities could be cited upon this proposition, but we deem it unnecessary. There was no variance in the proof.

We have carefully considered the evidence and are of the opinion that it is sufficient to sustain the verdict, and we are also of the opinion that the verdict is not contrary to law.

Judgment affirmed.