Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Apr 29 2013, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAYMOND CARTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1210-CR-779 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
Cause No. 29D03-1112-CM-18349

**April 29, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Raymond Carter appeals his conviction of invasion of privacy as a class A misdemeanor. Carter raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

FACTS

Carter and Candice McLurkin had children together but were never married. On April 7, 2010, Hamilton Superior Court 6 issued an Ex Parte Order for Protection which provided that Carter was "prohibited from harassing, annoying, telephoning, contacting or directly or indirectly communicating with [McLurkin]." State's Exhibit 1. The protective order indicated that it was effective until April 7, 2012. In June 2010, Carter appeared in person at a protective order hearing, and the court ordered that the previously issued protective order would remain in full force and effect until expiration or further order of the court.

On January 24, 2011, the Cass County Circuit Court in Michigan entered an order (the "Michigan Order") concerning custody, parenting, time, and child support. The Michigan Order provided that Carter and McLurkin would have joint legal custody of the children, that McLurkin would have physical custody of the children, and that Carter would have parenting time. The Michigan Order also stated:

**<u>IMPACT OF POSSIBLE PERSONAL PROTECTION ORDER</u>**

In the event a Personal Protection Order (PPO) exists between these parties, those specific provisions which limit or prohibit contact between these parties shall control the conduct of the parties during custody/parenting times set forth in this Order.

However, this Order has priority over any PPO in the granting of custody/parenting time, and the parties shall make alternative arrangements

2

necessary to execute all Court-ordered custody/parenting time, so as not to violate any PPO.

State's Exhibit 2.

On December 9, 2011, Carter called McLurkin at her home in Noblesville, Indiana, and left a message on her voicemail that indicated that he would be in the Indianapolis area and wanted to know if he could see his children. McLurkin called the police. Noblesville Police Officer James Aloisio responded to the call and listened to the voicemail message. McLurkin did not advise Officer Aloisio of the Michigan Order.

COURSE OF PROCEEDINGS

On December 27, 2011, the State charged Carter with invasion of privacy as a class A misdemeanor. At the bench trial, the State presented the testimony of McLurkin and Officer Aloisio as well as the protective order and the Michigan Order. After the State rested, Carter's counsel moved for an acquittal, and the court denied the motion. Carter testified that he was aware that the protective order was entered against him in Hamilton County, but that he did not think that he was in violation of the order when he called McLurkin. On cross-examination, Carter testified that he had read the part about the personal protection order in the Michigan Order.

After Carter rested, the following exchange occurred:

[Carter's Counsel]: [Carter] has to knowingly violate the protective order. And I think with the issuance of the Michigan order that the mens rea is not there as this gentleman understood it. He's testified he didn't believe he was violating the protective order by leaving a message trying to arrange to see his children.

THE COURT: [Carter's Counsel], knowingly is not based on what he knew. It's based on what a normal, ordinary person

3

would know based upon normal understanding of legal documents. Right?

[Carter's Counsel]: Yes, Judge. And I don't think a normal person –

THE COURT: His personal knowledge goes to the issue of culpability for punishment purposes, not for guilt or not guilt.

Transcript at 58-59.

The court found Carter guilty as charged. Specifically, the court stated: "[Carter] is in violation of the protective order which he knew about, which prohibits him from having any telephone communication with . . . the prosecuting witness. The Michigan order does not in any way, shape, or form impact the protective order, either legally or practically." Id. at 61-62. The court later stated:

> You must follow the protective order. And, unfortunately, in your decision you decided to commit a criminal offense. I'm sorry that you didn't think you were doing anything. And we're going to take that into account by the penalty that we give you. I'm going to take that into account, but it doesn't change the fact that you committed a criminal offense.

Id. at 74. The court's order states:

> The Court finds [Carter] guilty of Count 1: Invasion of Privacy, Class A Misdemeanor. In this finding the Court specifically notes that the violation although a violation is a technical violation. [Carter] raised a defense, not sufficient legally but persuasive practically, that he was permitted to visit with his children by order of a Michigan Court which the alleged victim herein was in violation of at the time of the contact herein. The evidence at trial clearly establishes, without question, that the contact at issue herein was a telephone message left by [Carter] on the phone of the alleged victim asking to see his children. The Court also notes that the parties are currently involved in a contested custody/visitation action in this Court, and they were engaged in that process at the time of the violation herein. Thus while [Carter] violated the terms of the protective order herein, the violation is explainable, and understandable.

Appellant's Appendix at 28.

4

ISSUE

The sole issue is whether the evidence is sufficient to sustain Carter's conviction for invasion of privacy as a class A misdemeanor. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. Id. We consider conflicting evidence most favorably to the trial court's ruling. Id. We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. Id. at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. Id.

ANALYSIS

The offense of invasion of privacy is governed by Ind. Code § 35-46-1-15.1, which provides: "A person who knowingly or intentionally violates . . . a protective order to prevent domestic or family violence issued under IC 34-26-5 (or, if the order involved a family or household member, under IC 34-26-2 or IC 34-4-5.1-5 before their repeal) . . . commits invasion of privacy, a Class A misdemeanor." "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). Thus, to convict Carter of invasion of privacy as a class A misdemeanor,

5

the State was required to prove that Carter knowingly or intentionally violated a protective order to prevent domestic or family violence.

Carter argues the evidence is insufficient because he did not knowingly or intentionally violate the protective order when he contacted McLurkin with the sole intention of exercising parenting time in accordance with the Michigan Order. Carter asserts that his actions were taken to effectuate the parenting time set out in the Michigan Order. Carter also argues that the trial court misinterpreted the knowingly element when it stated that "knowingly is not based on what [Carter] knew." Appellant's Brief at 6. Carter contends that "[e]ven if [he] was mistaken as to the effect of the Michigan Order, his subjective understanding of that effect shows that he lacked the *mens rea* necessary to commit Class A misdemeanor Invasion of Privacy." Id. at 7-8.

The State argues that the evidence is sufficient to sustain Carter's conviction because Carter was aware of the Hamilton County protective order and knowingly called McLurkin. The State maintains that the offense of invasion of privacy "does not require a specialized belief or level of *mens rea*" and that "Carter's assertion that he was required to subjectively believe that his act of calling McLurkin would violate the Hamilton County protective order is contrary to law." Appellee's Brief at 5-6. In his reply brief, Carter argues that the State's approach would "read 'knowingly or intentionally' out of the statute and would result in situations such as this where the defendant acted reasonably in accordance with the Michigan order." Appellant's Reply Brief at 2.

Carter's contention that he believed that he acted lawfully when he telephoned McLurkin and did not knowingly violate the protective order is unavailing. As

6

mentioned earlier, "[a] person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). Even assuming that Carter believed that he was not violating the protective order, it is well-settled that ignorance of the law is no excuse for criminal behavior. See Scalpelli v. State, 827 N.E.2d 1193, 1198 (Ind. Ct. App. 2005), trans. denied; Yoder v. State, 208 Ind. 50, 194 N.E. 645, 648 (1935) ("[E]very man is presumed to know the laws of the country in which he dwells . . . [I]gnorance of the law excuses no man.") (quoting Marmont v. State, 48 Ind. 21, 31 (1874)). The relevant inquiry is whether Carter was aware of the high probability that he telephoned or communicated with McLurkin who had a protective order at the time he did so. The evidence reflects that Carter knowingly telephoned or communicated with McLurkin. See Dewald v. State, 898 N.E.2d 488, 493 (Ind. Ct. App. 2008) (holding that defendant's contention that he believed that he acted lawfully when he stopped two individuals and that he therefore did not commit the crime of confinement knowingly was unavailing, that ignorance of the law is no excuse, and that the relevant inquiry was whether the defendant was aware of the high probability that he substantially interfered with the liberty of the two individuals), trans. denied.

Carter cites Tharp v. State, 942 N.E.2d 814, 818 (Ind. 2011). At issue in Tharp was the defendant's knowledge of the existence of the protective order at all. "[I]t appear[ed] that the only evidence that Tharp knew of the protective order was from Pitzer telling him about it – at the same time she told him it was no longer valid." 942 N.E.2d at 817. This fell short of "substantial evidence of probative value from which a finder of fact could find beyond a reasonable doubt that Tharp knowingly violated a protective

order." Id. at 818. More specifically, "the evidence [was] insufficient that Tharp received adequate notice of the protective order." Id.

The circumstances here do not parallel those of Tharp. Carter personally appeared at a June 2010 protective order hearing and was advised that the previously issued protective order would remain in full force and effect until expiration or further order of the court. He was subject to the Michigan Order that contemplated "alternative arrangements necessary to execute all Court-ordered custody/parenting time, so as not to violate any PPO." State's Exhibit 2. Carter's purported misunderstanding that the Michigan Order somehow "trumped" the Indiana protective order does not undercut the fact-finder's determination that Carter acted knowingly or intentionally when he picked up the phone and placed a call in violation of the protective order he knew to exist.

CONCLUSION

For the foregoing reasons, we affirm Carter's conviction for invasion of privacy as a class A misdemeanor.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.