**Tyron MISHLER and Ron Schmucker, Appellants–Defendants,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 20A03–9503–CR–87.**

Court of Appeals of Indiana.

Jan. 10, 1996.

h.  physical disability;
i.  mental disability or chemical dependency

only under certain circumstances.

Aaron E. Haith, Indianapolis, for appellants.

Pamela Carter, Attorney General, Geoffrey Slaughter, Janet Parsanko, Deputy Attorneys General, Indianapolis, for appellee.

## OPINION

FRIEDLANDER, Judge.

Tyrone Mishler and Ron Schmucker appeal their convictions for Trespass,[1] a class A misdemeanor and Battery,[2] a class B misdemeanor.

We affirm.

The facts most favorable to the judgment are that in August, 1992, twenty-year-old Shannon Leufling was charged with conversion in Elkhart. While Leufling was in jail awaiting trial, Crystal Sage, his nineteen-year-old live-in girlfriend, contacted Mishler and Schmucker about posting his bond. Both men were licensed bail bondsmen under Indiana law, and Mishler was president of A–1 Bonding Corporation and an attorney licensed to practice in Indiana. Schmucker was an agent for A–1.

Schmucker prepared the bond application based upon information provided by Leufling and Sage. The application indicated that Leufling lived on Middlebury Street and that his mother, Sonia Glanders, lived in the Woodwind Apartments on Clarinet Boulevard. The bond application unambiguously showed that Leufling did not reside with his mother.

Mishler and Schmucker posted a bond in the amount of $1500 for Leufling. Leufling was released from jail and ordered to appear in court on November 17, 1992. Leufling failed to appear, and the court sent Mishler and Schmucker notice advising them that a warrant had been issued for Leufling's arrest.

The bondsmen went to the address listed on the bond application in search of Leufling. Leufling's cousin answered the door and advised them that Leufling *might* be found at Glanders's apartment, or at the home of

---

1. Ind.Code 35–43–2–2.

2. Ind.Code 35–42–2–1.

Sage's mother. Mishler and Schmucker proceeded to Glanders's residence and were unable to locate Leufling. After talking with several people in an effort to find Leufling, Mishler and Schmucker returned to Glanders's apartment for a second time. Glanders's automobile was parked outside the residence. Glanders opened the door and Schmucker asked, "Where's Shannon?" *Record* at 76, 78. Glanders replied that she did not know and attempted to close the door. Schmucker had planted his foot inside the door to prevent it from being closed and Mishler proceeded to kick the door open. Both men entered the apartment bumping Glanders and knocking her off balance. To avoid falling, Glanders grabbed Mishler who then threatened her with his fist. Glanders ordered the men to leave, but they refused and searched the home for Leufling. Leufling was not in the apartment, and was eventually apprehended in an Elkhart department store.

On December 18, 1992, Mishler and Schmucker were charged with battery and trespass. Following a trial by court on April 28, 1994, both men were found guilty.

Mishler and Schmucker appeal and present the following issues:

1. Was it proper to find Mishler and Schmucker guilty of criminal trespass when they forcibly entered Glanders's residence without her consent?

2. Was the evidence sufficient to support the convictions for battery?

This is a novel question in Indiana, and we heard oral argument at Ball State University, Muncie, Indiana, on November 28, 1995.

■ Mishler and Schmucker initially observe that bail agents occupy a special position under the law which includes the right and obligation to break and enter the house of the *principal* in order to take him back into custody. *See Taylor v. Taintor* (1873), 83 U.S. 366, 21 L.Ed. 287; *United States v. Keiver* (1893), 56 Fed. 422. While the bondsmen maintain that the above-cited authority authorized them to forcibly enter Glanders's home to search for Leufling, *Taylor* and *Keiver* do not address the issue of whether a bail agent is lawfully entitled to forcibly enter a *third party's* dwelling to apprehend the principal.

In *Turner v. Wilson* (1875), 49 Ind. 581, our supreme court provided a broad description of a bail bondsman's common law rights in Indiana:

> "The common law right, as between the parties, of a bail to take his principal at any time, at any place, and under any jurisdiction, has remained unimpaired during more than two centuries.... [T]he bail may, by virtue of his piece, take him [the principal] in any house or place, in any county, state, or territory, on Sunday or any other day, in the night time, or at any time, and, upon demand, may break open doors."

*Id.* at 586.

While this language appears somewhat consistent with Mishler and Schmucker's claim, we find *Turner* inapplicable here, inasmuch as that case did not involve a bail bondsman's forcible entry into the dwelling of a third person. Rather, the issue presented in *Turner* concerned a sheriff's arrest of the principal on the authority of a recognizance bond obtained from the surety.

■ A bail agent's authority to arrest and surrender a criminal defendant is also derived from various statutory provisions. Ind. Code 27–10–2–7 empowers a surety to apprehend a defendant, yet the manner in which an arrest may be effected is not addressed. The statute provides as follows:

> "For the purpose of surrendering the defendant, the surety may apprehend the defendant before or after the forfeiture of the undertaking or may empower any law enforcement officer to make apprehension by providing written authority endorsed on a certified copy of the undertaking and paying the lawful fees therefor."

*Id.*

While we are mindful that Ind.Code 35–33–1–4 (the citizen's arrest statute) permits a person to arrest another individual under

certain circumstances,[3] it does not authorize a bondsman to forcibly enter the private dwelling of a third party to arrest the principal.

Our research has revealed that at least three states have rejected the argument that a bail agent has the right to break and enter a third party's dwelling. *See, e.g., State v. Tapia* (1991), Minn.Ct.App., 468 N.W.2d 342 (authority given to the bondsman to effectuate a principal's arrest does not extend to the forcible entry of a third party's residence); *State v. Lopez* (1986), 105 N.M. 538, 734 P.2d 778, *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (statutory right of a bondsman or his agent to arrest a principal does not empower defendants, without lawful process, to effect an armed entry into third party's home); *State v. Portnoy* (1986), 43 Wash.App. 455, 718 P.2d 805 (upheld bail agent's conviction and rejected claim that bondsman may sweep from his path all third parties who he believes are blocking his search for his client, without criminal liability).

■ In *Tapia,* the Court of Appeals of Minnesota affirmed a bailbondsman's conviction upon two counts of burglary when the evidence demonstrated that the defendant entered the private dwelling of a third party to arrest the principal who failed to appear in court after being released on bond. The court observed as follows:

"The contractual authority of a bondsman does not provide justification to infringe on third party rights. *See Portnoy,* 718 P.2d at 811. The surety-principal contract generally authorizes the bail bondsman, or his agent, to exercise jurisdiction and control over the principal during the period for which the bond is executed. *However, this contractual authority does not include the authority to infringe upon the rights of persons who are not parties to the contract.*

None of the sources from which a bail bondsman derives his authority . . . authorize the bondsman to forcibly enter the private dwelling of a third party to arrest the principal. Therefore, consistent with the decisions of other jurisdictions limiting the powers of a bail bondsman, we conclude that a bail bondsman does not have this authority."

*Id.* at 344 (emphasis supplied).

We agree with this line of reasoning and reject Mishler and Schmucker's claim that they were entitled to conduct a forced entry of Glanders's home in search of Leufling. Glanders was not a party to the surety-principal contract and the bail bondsmen were not empowered to forcibly enter her home under these circumstances.

■ We also reject Mishler and Schmucker's contention that they were entitled to forcibly enter Glanders's home in light of *Livingston v. Browder* (1973), 51 Ala.App. 366, 285 So.2d 923 where it was determined that a bail bondsman was lawfully permitted to make a nonconsensual entry of the home of the defendant's mother to effect an arrest.

In *Livingston,* the bondsman observed the defendant's automobile parked outside his mother's residence. As the bondsman approached the house, he saw the defendant sitting inside watching television. When the defendant's mother answered the door and acknowledged that her son was inside, the bondsman entered the home and chased the defendant as he proceeded to the back of the house. The trial court instructed the jury that a bail agent had no right, under any

---

**3.** IC 35–33–1–4 provides as follows:

"(a) Any person may arrest any other person if:

(1) the other person committed a felony in his presence:

(2) a felony has been committed and he has probable cause to believe that the other person has committed that felony; or

(3) a misdemeanor involving a breach of peace is being committed in his presence and the arrest is necessary to prevent the continuance of the breach of peace.

(b) A person making an arrest under this section shall, as soon as practical, notify a law enforcement officer and deliver custody of the person arrested to a law enforcement officer. (c) The law enforcement officer may process the arrested person as if the officer had arrested him. The officer who receives or processes a person arrested by another under this section is not liable for false arrest or false imprisonment."

circumstances, to enter a third party's home and arrest a principal without the third party's consent. The bondsman appealed a verdict entered in the mother's favor and the supreme court reversed. The court determined that, under the specific facts of the case, entry into the home of a third party, even without consent, would be appropriate if the bondsman acted reasonably in entering the home to arrest his principal:

"Able counsel for [the mother] states in brief that it would be inconceivable for the law to allow bail bondsmen to enter and search the homes of private citizens at will without any legal or judicial supervision. He may well be correct, but a bondsman does have the authority to arrest, as in this instance, *when he sees his principal in the dwelling; when he properly identifies himself; and when he acts in a reasonable manner to enter the dwelling to effectuate his arrest.* Under the circumstances referred to above, he would not be required to have the permission or consent of the owner of the dwelling, as the trial judge charged."

*Id.* 285 So.2d at 927.

Unlike the circumstances presented in *Livingston,* the record before us reflects that Mishler and Schmucker only saw Glanders's car parked in front of her home. No one saw Leufling in the house, and Glanders specifically told the bondsmen that he was not there. It is apparent that Schmucker and Mishler only speculated that Leufling might have been inside. Such conjecture regarding Leufling's whereabouts renders *Livingston* inapplicable and the bondsmen were not justified in entering the home under the circumstances.

None of the sources from which a bail agent derives his authority—the common law, IC 27–10–2–7, or the bail agent's contract—authorize a bondsman to forcibly enter the private dwelling of a third party to arrest the principal. Any authority given to Mishler and Schmucker, as bail agents, to effect Leufling's arrest, did not extend to the forcible entry of Glanders's residence.

Mishler and Schmucker next argue that the conviction for trespass may not stand because "they believe[d] in good faith that they [were] acting legally," *see* Appellant's Brief at 16, and that there was no evidence that they knowingly or intentionally committed the offense.

■ IC 35–43–2–2(a)(5) provides that "A person who: not having a contractual interest in the property, knowingly or intentionally enters the dwelling of another person without the person's consent … commits criminal trespass, a Class A misdemeanor." As discussed *supra,* the record clearly demonstrates that the State proved the elements of this offense. The evidence is uncontradicted that Mishler and Schmucker entered Glanders's apartment without her consent. In light of our discussion above, the agents were required to obtain such consent prior to entry. Mishler and Schmucker have made no claim that they obtained professional legal advice authorizing their forcible entry into Glanders's residence without specific knowledge that Leufling was inside. They have also failed to demonstrate that they were acting under the reasonable belief that forcibly entering Glanders's apartment was appropriate under the circumstances. The evidence was therefore sufficient to support the conviction for trespass.

### 2.

Mishler and Schmucker next argue that the battery convictions must be reversed because the allegations contained in the charging informations vary from the evidence presented at trial. *See* Appellant's Brief at 19–20.

■ The information charging Mishler with battery alleged that he committed the offense "by pushing [Glanders] forcefully with his hands in her chest and knocking her off balance." *Record* at 14. The information alleging that Schmucker committed battery alleged that he "forcefully nudg[ed] [Glanders] in the right shoulder as he pushed past her." *Record* at 20. The bondsmen complain that the battery convictions may not stand because Glanders testified at trial that Mishler and Schmucker only "bumped" or "hit" Glanders in an unintentional manner when they entered the apartment. *Record* at 81, 102. The bondsmen therefore argue

that the evidence failed to establish that they knowingly or intentionally committed the battery as charged.

Even though a variance existed, Mishler and Schmucker have failed to allege that their defense was impaired by this variance or that it subjected them to the likelihood of another prosecution for the same offense. This court has determined that a variance between the offense charged and the proof adduced at trial requires reversal only if the variance misleads the defendant in preparation of a defense or places him in danger of double jeopardy. *Robinson v. State* (1994), Ind.App., 634 N.E.2d 1367.

We will affirm a conviction for battery so long as there is evidence of touching, however slight. *Shaw v. State* (1959), 239 Ind. 248, 156 N.E.2d 381; *Halligan v. State* (1978), 176 Ind.App. 463, 375 N.E.2d 1151. At trial, Glanders testified that Mishler kicked open the door. Upon entering the apartment, both men hit and bumped Glanders, causing her to fall backwards. While the offense of battery requires knowing or intentional conduct in accordance with IC 35–42–2–1, the requisite intent may be presumed from the voluntary commission of the act. *See Carty v. State* (1981), Ind.App., 421 N.E.2d 1151. Under the facts presented, it was reasonable for the trial court to infer that Mishler and Schmucker committed battery.

Judgment affirmed.

KIRSCH, J. concurs.

DARDEN, J. concurs.