Bart A. DEWALD, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A04–0805–CR–311.

Court of Appeals of Indiana.

Dec. 31, 2008.

---

Charles W. Lahey, South Bend, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Janine Steck Huffman, Deputy Attorney General, Indianapolis, IN, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

After a jury trial, Bart A. Dewald was convicted of two counts of Class D felony criminal confinement. On appeal, he challenges the sufficiency of the evidence to support his convictions. First, he contends that the evidence does not show that he confined the victims and, in any event, confining them was not illegal because he had the authority to detain the victims in order to effectively perform his job. Second, he argues that the evidence fails to show that he acted "knowingly" because he believed that he acted within his authority. Concluding that the evidence is sufficient in both of these regards and that Dewald was not authorized to detain the victims, we affirm.

### Facts and Procedural History

In June 2006, Dewald and Constantine Nichols were both bail bondsmen and fugitive recovery agents in Indiana. In the course of his work as a bail bondsman,

Dewald posted a bond for an individual named Evelyn Mitchell. Mitchell owned a 2001 Chrysler Town and Country minivan that looked green or blue, depending upon lighting conditions. Vol. I Tr. p. 60–61.[1]

On June 14, 2006, Dewald received a tip that Mitchell planned to flee from Indiana. He called Nichols to ask for assistance in locating and apprehending Mitchell. Nichols agreed to help in exchange for payment. Nichols met Dewald at a restaurant in Goshen, where Dewald provided him with information about Mitchell's bond and a black and white photograph of her. After this brief meeting, Nichols drove toward Mitchell's parents' residence, while Dewald drove to Mitchell's house.

While Dewald watched Mitchell's house, a light-colored minivan pulled up to the house, dropped off a child, and then drove away. Dewald called Nichols to alert him that "a van had just stopped at the residence and took off at a high rate of speed. And he thought that he was going to follow, because he suspected that, possibly, ... [Mitchell] was in that van; he wasn't sure." Vol. II Tr. p. 49. Nichols joined Dewald in pursuit of the minivan. He passed the minivan, while Dewald followed it closely. Once in front of the minivan, Nichols braked, forcing the minivan, which had been traveling thirty-five to forty miles per hour, to quickly brake and stop. Nichols' vehicle was several feet in front of the stopped minivan, and Dewald pulled up in his vehicle about two feet behind the minivan. This prevented the driver of the minivan from pulling away. Vol. I. Tr. p. 79–80; Vol. II Tr. p. 14.

Dewald and Nichols exited their vehicles and walked to the front of the minivan.

Dewald stood on the driver's side, while Nichols stood on the passenger's side. They encountered two women, neither of whom was Mitchell, sitting in the front seat. In fact, the minivan belonged to Oaklawn Psychiatric Center, and the two women inside of the minivan were child therapists employed by Oaklawn. The therapists, Sara Trovatore and Marilyn Draper, were transporting children to and from therapy sessions in the minivan, and they had just dropped off a child at Mitchell's residence. When Dewald and Nichols stopped them, Trovatore and Draper still had one child patient in the minivan.

Dewald and Nichols began questioning Trovatore and Draper about Mitchell's whereabouts. Trovatore informed the men that she did not know where Mitchell was. Vol. I Tr. p. 81. However, Dewald and Nichols continued questioning the women. *Id.* Dewald asked Trovatore to call Mitchell and to tell her that something bad had happened to her son and that she needed to come home. *Id.* at 91. Trovatore refused to do so. *Id.* Eventually, Dewald and Nichols commented that they were wasting their time and left. Vol. II Tr. p. 22. The entire incident lasted between five and ten minutes. Vol. I Tr. p. 94. Later, Draper reported the incident to her supervisor at Oaklawn, and Trovatore reported the incident to police. *Id.* at 97; Vol. II Tr. p. 24–25.

The State charged Dewald with two counts of Class D felony criminal confinement.[2] Ind.Code § 35–42–3–3(a). After a jury trial, Dewald was convicted as charged. The trial court entered judgment of conviction on both counts and,

---

1. The court reporter for the trial court did not consecutively number the pages of the transcript regardless of the number of volumes as required by Indiana Appellate Rule 28(A)(2); therefore, citations to the transcript are referred to by their volume number and the page number within that volume.

2. The State also charged Nichols with two counts of criminal confinement.

after a sentencing hearing, sentenced Dewald to concurrent terms of one-and-one-half years. Appellant's App. p. 29. Dewald now appeals his convictions.

## Discussion and Decision

Dewald appeals his two convictions for criminal confinement. On appeal, he challenges the sufficiency of the evidence to support his convictions. We restate his arguments as follows: (1) the evidence fails to show that he confined the women and, in any event, confining them was not illegal because he had the authority to detain the women in order to effectively perform his job and (2) the evidence fails to show that he acted "knowingly" because he believed that he acted within his authority.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider only the evidence most favorable to the trial court's ruling. *Id.* Appellate courts affirm the conviction unless "no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quotation omitted). The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

### I. *Confinement*

In order to convict Dewald of Class D felony criminal confinement, the State had to prove that he "knowingly or intentionally: ... confine[d] another person

without the other person's consent[.]" I.C. § 35–42–3–3(a). Dewald argues that the State presented insufficient evidence to prove that he confined Trovatore and Draper. His argument has three components. First, he contends that the evidence does not show that Trovatore and Draper were unable to leave during their encounter with Dewald and Nichols. Second, he contends that, even if the women were confined during this encounter, the evidence does not show that *he* was responsible for their confinement. Third, he contends that confining the women was not illegal because he had the authority, as a bail bondsman, to detain them in order to effectively perform his job.

To "confine" means "to substantially interfere with the liberty of a person." Ind. Code § 35–42–3–1. Here, evidence was presented that Nichols passed the minivan driven by Trovatore and braked suddenly, forcing the minivan, which had been traveling thirty-five to forty miles per hour, to quickly brake and stop. Vol. I Tr. p. 77. Nichols' stopped vehicle was two to five feet in front of the stopped minivan. *Id.* at 78; Vol. II Tr. p. 13. Dewald stopped his vehicle about two feet behind the minivan. Vol. I Tr. p. 79. This prevented Trovatore and Draper from pulling away. *Id.* at 79–80; Vol. II Tr. p. 14. Dewald and Nichols then approached the minivan and questioned Trovatore and Draper. Regarding her inability to drive away in the minivan during this encounter, Trovatore testified:

Q. And at that point in time, could you have moved the vehicle you were in?

A. No.

Q. Why not?

A. We wouldn't have been able to—we wouldn't have had enough room to get turned to get out without hitting one of the vehicles.

Vol. I Tr. p. 79–80; *see also* Vol. II Tr. p. 14 (Draper also testifying that she did not believe that they could have driven away during the encounter). Dewald's contention that because there was "enough room for Nichols to walk between the front bumper of the Oaklawn van and the back bumper of his vehicle" the women were not confined is merely a request that we reweigh the evidence, which we will not do. Appellant's Br. p. 8. The evidence is sufficient to show that Trovatore and Draper were confined.

In the alternative, Dewald contends that, even if the women were confined during the encounter, the evidence shows that Nichols—not he—was responsible for their confinement. However, the State presented evidence that Nichols and Dewald acted together to trap the minivan in which Trovatore and Draper were riding. Dewald followed the minivan and, once Nichols braked quickly in front of it, Dewald pulled his vehicle in closely behind the minivan and parked, preventing the women from driving away. Vol. I Tr. p. 79–80. The evidence is sufficient to prove that Dewald confined Trovatore and Draper.

Nonetheless, Dewald further argues that the State failed to prove that he unlawfully confined Trovatore and Draper because he had the authority, as a bail bondsman, to detain them. Dewald cites *Mishler v. State*, 660 N.E.2d 343 (Ind.Ct.App.1996), in support of his claim that bail bondsmen enjoy a special position in society allowing them to detain members of the public. Appellant's Br. p. 7, 9–10. In *Mishler*, bail bondsmen went to a defendant's mother's home, aware that the defendant did not live there, and forcefully entered the home in order to search for the defendant. Rejecting the bail bondsmen's argument that they were authorized to enter the home forcibly in search of the defendant, we recognized a bail agent's common law and statutory rights to apprehend a defendant. *Mishler*, 660 N.E.2d at 345 (citing *Taylor v. Taintor*, 16 Wall. 366, 83 U.S. 366, 21 L.Ed. 287 (1873); *United States v. Keiver*, 56 F. 422 (C.C.W.D.Wis.1893); *Turner v. Wilson*, 49 Ind. 581, 586 (1875); Ind.Code § 27–10–2–7). We held, however, that the rights associated with this "special position" are limited to the apprehension of the defendant, concluding that where a bondsman forcibly enters the dwelling of a third party, the bondsman is liable under the criminal laws of Indiana. *Id.* at 345–46. Further, we agreed with the line of reasoning employed in a decision from the Minnesota Court of Appeals, which affirmed a bail bondsman's burglary convictions and provided in part:

> "The contractual authority of a bondsman does not provide justification to infringe on third party rights. The surety-principal contract generally authorizes the bail bondsman, or his agent, to exercise jurisdiction and control over the principal during the period for which the bond is executed. *However, this contractual authority does not include the authority to infringe upon the rights of persons who are not parties to the contract.*"

*Id.* at 346 (emphasis added in *Mishler*) (internal citation omitted) (quoting *State v. Tapia*, 468 N.W.2d 342, 344 (Minn.Ct.App. 1991), *review denied*).

Dewald distinguishes his behavior from the facts of *Mishler* and contends that his detention of third parties was reasonable and should be legally permissible. The authority he presents in this regard has only to do with the power of *police officers* to conduct investigative stops. Dewald presents no authority for his position that a *bail bondsman* may detain third parties for investigative purposes. He cites to the "special position" enjoyed by bail bondsmen empowering them to arrest fugitives

and argues that this Court should expand upon it and "find that bail bondsmen have the same powers as police to reasonably detain persons based upon 'reasonable suspicion'...." Appellant's Br. p. 11 (citing *Mishler*, 660 N.E.2d at 345). As we cited with approval in *Mishler*, however, the "'contractual authority [of a bail bondsman under a surety-principal contract] does not include the authority to infringe upon the rights of persons who are not parties to the contract.'" *Mishler*, 660 N.E.2d at 346 (quoting *Tapia*, 468 N.W.2d at 344). Detaining third parties, no matter how briefly, infringes upon their rights. We decline Dewald's invitation to expand the law pertaining to the authority of bail bondsmen to permit bondsmen to conduct investigatory stops of third parties.

## II. Mens Rea

Next, Dewald argues that the evidence fails to show that he acted "knowingly." He contends that the State failed to disprove that he believed that he acted within his authority in detaining Trovatore and Draper. Appellant's Br. p. 11. For this reason, he argues, he did not knowingly commit criminal confinement.

Dewald's contention that he believed that he acted lawfully when he stopped Trovatore and Draper and that he therefore did not commit the crime of confinement "knowingly" is unavailing. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35-42-2-2(b). Even if we take Dewald at his word that he fully believed that he was permitted by law to detain third parties when trying to locate his bail customers (which he had no reason under *Mishler* to believe), it is well-settled that ignorance of the law is no excuse for criminal behavior. *Scalpelli v. State*, 827 N.E.2d 1193, 1198 (Ind.Ct.App.2005),

*trans. denied; Yoder v. State*, 208 Ind. 50, 194 N.E. 645, 648 (1935) (" '[E]very man is presumed to know the laws of the country in which he dwells ... [I]gnorance of the law excuses no man.' ") (quoting *Marmont v. State*, 48 Ind. 21, 31 (1874)). Instead, the relevant inquiry is whether Dewald was aware of the high probability that he "substantially interfere[d] with the liberty" of Trovatore and Draper. I.C. § 35-42-3-1.

The evidence reflects that he was. Trovatore and Draper were forced to stop their employer's minivan after Nichols suddenly braked and stopped in front of them. With Nichols' vehicle only two to five feet in front of the stopped minivan, Vol. I Tr. p. 78; Vol. II Tr. p. 13, Dewald pulled up and parked his vehicle only two feet behind the minivan. Vol. I Tr. p. 79. This deprived Trovatore and Draper of enough space between the vehicles to drive away. *Id.* at 79–80; Vol. II Tr. p. 14. Dewald then participated in questioning the women while they sat inside their boxed-in vehicle. The evidence is sufficient to prove that he confined Trovatore and Draper knowingly.

## Conclusion

The evidence is sufficient to support Dewald's two convictions for Class D felony criminal confinement. Further, we decline Dewald's request that we expand the authority of bail bondsmen to permit them to detain third parties for investigatory purposes. The judgment of the trial court is affirmed.

RILEY, J., and DARDEN, J., concur.