Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**CATHY M. BROWNSON**
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana



FILED
Aug 20 2012, 9:36 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES E. TRUE, | ) | |
| Appellant, | ) | |
| vs. | ) | No. 24A01-1110-CR-532 |
| STATE OF INDIANA, | ) | |
| Appellee. | ) | |

APPEAL FROM THE FRANKLIN CIRCUIT COURT
The Honorable Clay M. Kellerman, Judge
Cause No. 24C02-1012-FD-610

**August 20, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

James E. True ("True") was convicted in Franklin Circuit Court of Class D felony residential entry and Class A misdemeanor invasion of privacy. True now appeals and raises the following restated and reordered issues:

I. Whether his trial counsel was ineffective for failing to tender a jury instruction on mistake of fact;

II. Whether the State presented sufficient evidence to support his convictions; and

III. Whether his convictions violate Indiana's constitutional prohibition against double jeopardy.

We affirm in part, reverse in part, and remand with instructions.

**Facts and Procedural History**

True and his wife, Stephanie True, ("Stephanie") had been married for twenty years when Stephanie filed for divorce in April 2010. During the marriage, True and Stephanie lived in a residence located on Rebecca Drive in Franklin County. When the couple separated, True left the marital residence and moved in with a neighbor. Stephanie continued to live in the marital residence, and on July 15, 2010, the dissolution court issued a provisional order giving Stephanie exclusive possession of the residence during the pendency of the dissolution proceedings.

While the dissolution proceedings were pending, Stephanie sought and obtained protective orders against True. Specifically, Stephanie obtained an ex parte order of protection on June 24, 2010 and an order of protection on July 13, 2010, which was amended on August 23, 2010. True was present at the hearings on the July 13 and August 23, 2010 orders. The August 23, 2010 order provided that True was "prohibited

2

from harassing, annoying, telephoning, contacting or directly or indirectly communicating with" Stephanie, with the exception that True was allowed to attend and participate in events related to his employment. Ex. Vol, State's Ex. L., p. 3. The order further provided that True was to stay away from Stephanie's residence.

During the fall of 2010, Stephanie and True engaged in mediation with respect to the pending dissolution proceedings. During the mediation, the parties agreed that True would ultimately be awarded the marital residence. One proposed settlement agreement provided that Stephanie would vacate the home "no later than November 15, 2010." Ex. Vol., Defendant's Ex. 1, p. 4. However, this proposed settlement agreement was neither signed by the parties nor approved by the dissolution court. On December 6, 2010, the dissolution court entered its decree of dissolution and approved a settlement agreement that gave Stephanie until November 20, 2010 to vacate the home.

Meanwhile, in late October 2010, Stephanie began an out-of-town training program for her job that required her to stay in a hotel in Plainfield, Indiana, but she still kept many of her personal belongings at the Rebecca Drive residence and received her mail there. On November 13, 2010, Stephanie began moving her possessions out of the Rebecca Drive residence, but she was unable to finish doing so on that date. On November 15, 2010, True went to the Rebecca Drive residence where he used a credit card and putty knife to pry open a locked side door to the garage. True then entered the residence and removed a small lamp and a pool filter. Later that day, Stephanie returned to the residence with her boyfriend, Gary Wolfe ("Wolfe"), and saw that the door was open and damaged. Upon entering the house, Stephanie noticed that items were missing.

3

Stephanie called 911, and Officer Donald L. Smith ("Officer Smith") of the Franklin County Sheriff's Department responded to the call. Officer Smith observed that the door had been pried open and took photographs of the damage. Before leaving the residence, Stephanie asked her neighbor, Lora Smith ("Smith"), to call her if she saw anyone at the house.

The next morning, True returned to the Rebecca Drive residence and removed a pool key. When Smith saw True's car in the driveway, she called Stephanie. Stephanie was at Wolfe's nearby residence, and she and Wolfe proceeded toward the Rebecca Drive residence in Wolfe's car. While en route, Stephanie called 911, and the dispatcher told her not to enter the house until police arrived. As Stephanie and Wolfe drove toward the house, they passed True's vehicle headed in the opposite direction. However, by the time Stephanie and Wolfe pulled into Smith's driveway, True had turned around and also pulled into Smith's driveway. True drove down the driveway at a high rate of speed, and Wolfe believed that True was going to hit his vehicle. Stephanie exited Wolfe's car and ran toward Smith's house, and True stopped just short of hitting Wolfe's vehicle. Wolfe then exited his car, and a confrontation between Wolfe and True ensued during which Wolfe displayed a gun.

Officer Smith responded to the 911 call and spoke with Stephanie. Officer Smith then informed True that he was investigating a break-in at the Rebecca Drive residence, and True volunteered that he had broken into the house that morning. Officer Smith examined the side door to the garage and saw that there was fresh damage to the door. Specifically, the entire door facing was broken out as if someone had "shouldered it, or

4

kicked it open." Tr. p. 48. True told Officer Smith that he had paperwork at his office indicating that Stephanie was required to vacate the home by November 15. Officer Smith instructed True to go to his office and find the paperwork, and told True that he would be along shortly to look at it. When Officer Smith arrived at True's office, True was unable to locate the paperwork. Officer Smith told True that he was not going to arrest him, but that he was going to file a report and charges might be filed by the prosecutor's office.

Later that same morning, True located the paperwork he claimed required Stephanie to vacate the residence by November 15, 2010, and headed toward the Sheriff's Department to show the paperwork to Officer Smith. At the same time, Stephanie was on her way to the Sheriff's Department to speak to Officer Smith about the investigation. As Stephanie drove toward the Sheriff's Department, she saw True driving in the other direction. Stephanie then parked in a location near the jail and, as she crossed the street, she saw True driving nearby. When True turned his car around and headed back in the direction of the jail, Stephanie became "hysterical" and ran toward the jail. Tr. p. 102. Jail matron Sally Henson ("Henson") saw Stephanie as she approached the jail, and she noticed that Stephanie was very upset. She also saw True getting out of his vehicle and observed True motion to Stephanie. Henson allowed Stephanie inside the jail building and then took her to Officer Smith's office. A short time later, Officer Smith encountered True in the building's lobby. True presented Officer Smith with a proposed settlement agreement that he claimed gave him permission to be inside the Rebecca Drive

residence, but the document was neither signed nor file stamped by the trial court. Officer Smith then placed True under arrest.

The State charged True with Class D felony residential entry and three counts of Class A misdemeanor invasion of privacy. Following a jury trial, True was found guilty of residential entry and one count of invasion of privacy, but acquitted of the remaining two invasion of privacy charges. True now appeals.[1]

## I. Ineffective Assistance of Trial Counsel

In this direct appeal, True raises a claim of ineffective assistance of trial counsel. A post-conviction proceeding is generally the preferred forum for adjudicating claims of ineffective assistance of counsel because the presentation of such claims often requires the development of new evidence not present in the trial record. See Woods v. State, 701 N.E.2d 1208, 1219 (Ind. 1998). If a defendant chooses to raise a claim of ineffective assistance of counsel on direct appeal, "the issue will be foreclosed from collateral review." Id. at 1220. This rule should "likely deter all but the most confident appellants from asserting any claim of ineffectiveness on direct appeal." Id. When a claim of ineffective assistance of counsel is based solely on the trial record, as it is on direct appeal, "every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight[,]" and "[i]t is no surprise that such claims almost always fail." Id. at 1216 (internal quotes and citation omitted).

---

[1] We remind counsel that under the amendments to the Appellate Rules that became effective in January 2011, "parties should not reproduce any portion of the Transcript in the Appendix." Ind. App. R. 50(F).

To prevail on a claim of ineffective assistance of counsel, True must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced him. Coleman v. State, 694 N.E.2d 269, 272 (Ind. 1998) (citing Strickland v. Washington, 466 U.S. 668 (1984)). There is a strong presumption that counsel rendered adequate assistance. Id. "Evidence of isolated poor strategy, inexperience or bad tactics will not support a claim of ineffective assistance." Id. at 273.

To establish the prejudice prong of the test, True must also show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Sims v. State, 771 N.E.2d 734, 741 (Ind. Ct. App. 2002), trans. denied. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Prejudice exists when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result of the proceeding fundamentally unfair or unreliable." Coleman, 694 N.E.2d at 272.

True argues that his trial counsel's performance was constitutionally deficient because he failed to tender a jury instruction on mistake of fact. Pursuant to Indiana Code section 35-41-3-7, "[i]t is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." For mistake of fact to be a valid defense, three elements must be satisfied: (1) the mistake must be honest and reasonable; (2) the mistake must be about a matter of fact; and (3) the mistake must negate the culpability required to commit the crime. Barton v. State, 936 N.E.2d 842, 854 (Ind. Ct.

7

App. 2010), trans. denied. "With regard to the first element, 'Honesty is a subjective test dealing with what appellant actually believed. Reasonableness is an objective test inquiring what a reasonable man situated in similar circumstances would do.'" Id. (quoting Nolan v. State, 863 N.E.2d 398, 404 (Ind. Ct. App. 2007), trans. denied). True claims that mistake-of-fact instruction was warranted in this case because he was mistaken as to whether he had consent or legal authority to enter the residence on the dates in question due to the existence of the unsigned proposed settlement agreement that provided he would take possession of the residence on November 15, 2010.[2]

Although True claims that his defense counsel's performance was constitutionally deficient, his Appellant's Brief is completely devoid of any analysis of this issue. Indeed, in support of his argument that counsel's performance fell below an objective standard of reasonableness, True offers only one conclusory statement, without citation to authority, that "[t]rial counsel's performance on this well-settled area of law, preservation of a defense, was deficient." Appellant's Br. at 10. Notably, True has made no effort whatsoever to discount the possibility that trial counsel's failure to tender a mistake of fact instruction was the result of a strategic decision rather than oversight or inadvertence.

In his closing argument, True's trial counsel focused in large part on attempting to convince the jury that, at the time of the alleged offenses, the Rebecca Drive residence

---

[2] To the extent that True argues that he was mistaken as to whether he had legal authority to enter the residence on the dates in question by virtue of the proposed settlement agreement, this is more appropriately framed as a mistake of law with respect to the legal import of the proposed agreement. "[I]t is well-settled that ignorance of the law is no excuse for criminal behavior." Dewald v. State, 898 N.E.2d 488, 493 (Ind. Ct. App. 2008), trans. denied. Accordingly, True would not have been entitled to an instruction indicating that a mistake of law is a defense to the charges alleged. See id. (bail bondsman's mistaken belief that he had legal authority to detain citizens was no defense to criminal confinement charges). Nevertheless, even assuming arguendo that the rubric of mistake of fact applies, for the reasons we set forth above, it is unavailing.

8

was not Stephanie's "dwelling" for the purposes of the residential entry statute or her "residence" for the purposes of the protective order. To this end, he emphasized Stephanie's admission that she had not stayed there for some time and had moved most of her belongings out. True's trial counsel further argued that the State had not satisfied its burden of proving the *mens rea* elements of the charged offenses because True believed he was authorized to be on the property and to enter the home on the date of the offenses. Said counsel finally argued that True's actions with respect to the Rebecca Drive residence were essentially a civil matter that should be addressed through the divorce proceedings.

Defense counsel's failure to tender a jury instruction on mistake of fact could be supported by a number of strategic considerations within the contemplation of Woods, supra. Perhaps trial counsel, who had the benefit of observing the jury's reactions during Stephanie's and True's testimonies, was convinced that the jury did not believe True's testimony concerning his purported belief that an unsigned, unapproved proposed settlement agreement gave him consent or authority to enter the residence, especially in light of the fact that True chose to break into the house rather than insist on being provided with keys or calling a locksmith. Perhaps counsel believed that the jury would not find any such belief on True's part reasonable in light of the fact that he had apparently not been provided with keys to the house. Perhaps counsel believed that tendering a separate instruction on mistake of fact would draw attention to the requirement that any mistake on True's part be both honest and reasonable, and therefore chose to rely solely on the instructions defining the *mens rea* elements of the crimes to

9

advance his arguments concerning True's mental state. Perhaps trial counsel believed that tendering a separate instruction on mistake of fact would confuse the jury or that the best strategy was to attempt to convince the jury that True's actions should have been handled as a civil matter through the divorce proceedings.

As we explained above, where a claim of ineffective assistance of counsel is based solely on the trial record, "every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight[,]" and, consequently, such claims nearly always fail. Woods, 701 N.E.2d at 1216. Our supreme court has held that, because counsel is assumed to be competent, "an action or omission that is within the range of reasonable attorney behavior can only support a claim of ineffective assistance if that presumption is overcome by specific evidence as to the performance of the particular lawyer." Morgan v. State, 755 N.E.2d 1070, 1074 (Ind. 2001). Because it is possible that True's counsel made one or more of several reasonable strategic decisions not to tender a mistake of fact instruction and True has not set forth any specific evidence to overcome the presumption of attorney competence, True has not established that his counsel's performance was constitutionally deficient.

Nor can we conclude that True has satisfied the prejudice prong of the Strickland test for ineffective assistance of counsel. As we explained above, although True's defense counsel did not tender a jury instruction on mistake of fact, he did argue in closing argument that True did not possess the requisite "knowing or intentional" *mens rea* to support the charges because he believed that he had legal authority and/or consent to be on the premises. The jury obviously rejected this argument, and we therefore

10

cannot conclude that there is a reasonable probability that jury would have reached a different conclusion had True's defense counsel taken the additional step of tendering a written jury instruction on mistake of fact. See Barton, 936 N.E.2d at 854 (providing that in order to prevail on a mistake-of-fact defense, the mistake must negate the culpability required to commit the crime). True has not established that his defense counsel was ineffective.

## II. Sufficiency of the Evidence

Next, True argues that the State presented insufficient evidence to support his convictions. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Atteberry v. State, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences to be drawn therefrom. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not be disturbed. Baumgartner v. State, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008). It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. Drane v. State, 867 N.E.2d 144, 147 (Ind. 2007). Accordingly, the question on appeal is whether the inferences supporting the verdict were reasonable, not whether other, "more reasonable" inferences could have been made. Thompson v. State, 804 N.E.2d 1146, 1150 (Ind. 2004). Because reaching alternative inferences is the function of the trier of fact, we

11

cannot reverse a conviction merely because a different inference might plausibly be drawn from the evidence. Id.

In order to support True's Class D felony residential entry conviction, the State was required to prove that True knowingly or intentionally broke and entered Stephanie's dwelling. Ind. Code § 35-43-2-1.5. True does not dispute the sufficiency of the evidence to prove that he broke and entered Stephanie's dwelling. His only argument is that the State failed to prove that he did so with the requisite *mens rea*; that is, he argues that the State presented insufficient evidence that he did so knowingly or intentionally.[3] Specifically, he claims that he mistakenly believed he had consent and/or legal authority to enter the residence based on the unsigned proposed settlement agreement providing that Stephanie would vacate the Rebecca Drive residence on November 15, 2010.

This argument essentially amounts to a mistake-of-fact defense. See Appellant's Br. at 8 ("True's belief and defense that he had consent equates to a mistake of fact defense."). As we explained above, "[i]t is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." Ind. Code § 35-41-3-7.

---

[3] True also argues that even if the evidence is sufficient to support his conviction, "a more appropriate vehicle for this matter would have been a civil contempt proceeding, rather than criminal charges of residential entry and invasion of privacy." Appellant's Br. at 11. Whether to prosecute at all and what charges to bring are generally decisions within the prosecutor's discretion. Kibbey v. State, 733 N.E.2d 991, 996 (Ind. Ct. App. 2000). Moreover, True's reliance on Thomas v. State, 936 N.E.2d 339 (Ind. Ct. App. 2010) is misplaced. In Thomas, during a hearing on a previously issued ex parte protective order, the defendant called the petitioner a derogatory name and told him to stop calling her. Id. at 339. Thomas was convicted of invasion of privacy, and this court reversed, concluding that "the institution of direct contempt proceedings was a more appropriate action in response to Thomas's statement to Smith in the courtroom." Id. at 341. Judge Bradford dissented, concluding that the evidence was sufficient to support the invasion of privacy conviction. Id. (Bradford, J., dissenting). Without commenting on the merits of the decision in Thomas, we conclude that the case is factually inapposite.

Although True testified that he believed he had the right to enter the residence and his counsel argued that he did not possess the requisite *mens rea*, he did not tender a jury instruction on the defense. Accordingly, True has waived this issue for appellate review. See Nolan v. State, 863 N.E.2d 398, 404 (Ind. Ct. App. 2007) (holding that defendant waived appellate review of mistake-of-fact argument by failing to offer a jury instruction on mistake-of-fact defense), trans. denied. However, True argues that his failure to advance a mistake-of-fact defense at trial does not prevent him from arguing that he lacked the requisite *men rea* to commit the offense.

Whether the argument is phrased in terms of the sufficiency of the evidence to prove the *mens rea* element of True's offense or to disprove that True made a mistake of fact, the State presented sufficient evidence to support True's residential entry conviction. Intent is a mental state and, absent an admission by the defendant, the trier of fact must resort to the reasonable inferences drawn from both the direct and circumstantial evidence to determine whether the defendant had the requisite intent to commit the offense in question. Stokes v. State, 922 N.E.2d 758, 764 (Ind. Ct. App. 2010), trans. denied. And whether True made a mistake of fact is a question for the trier of fact, which we review the issue under the same standard applied when the sufficiency of the evidence is challenged. See Saunders v. State, 848 N.E.2d 1117, 1121 (Ind. Ct. App. 2006), trans. denied.

The jury was in no way bound to believe True's assertions that he believed the proposed settlement agreement constituted consent or gave him legal authority to enter the residence. The proposed settlement agreement was not signed by True or Stephanie,

13

and its language provided that it would only take effect upon approval by the dissolution court and entry of a decree of dissolution, neither of which occurred until well after True's offense. And the fact that True used tools to pry open the side garage door rather than calling a locksmith or attempting through other, legitimate means to obtain a key provides additional support for the conclusion that True knew he was entering the home unlawfully. True's arguments to the contrary are simply requests to reweigh the evidence and judge the credibility of witnesses, which we will not do on appeal. The State presented sufficient evidence to support True's Class D felony residential entry conviction.[4]

### III. Double Jeopardy

Finally, True argues that his convictions for residential entry and invasion of privacy violate Indiana's constitutional prohibition against double jeopardy. The double jeopardy clause found in Article 1, Section 14 of the Indiana Constitution "was intended to prevent the state from being able to proceed against a person twice for the same criminal transgression." Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999). Two or more offenses are the "same criminal transgression" for the purposes of the Indiana double jeopardy clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Id.

---

[4] True also challenges the sufficiency of the evidence to support his Class A misdemeanor invasion of privacy conviction. Because we conclude that True's invasion of privacy conviction be must vacated as a violation of Indiana's double jeopardy prohibition, we do not reach this argument.

Here, True challenges his convictions under the actual evidence test, which "prohibits multiple convictions if there is 'a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" Davis v. State, 770 N.E.2d 319, 323 (Ind. 2002) (quoting Richardson, 717 N.E.2d at 53). The defendant must show that the evidentiary facts establishing the elements of one offense also establish all of the elements of a second offense. Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002). Thus, under the actual evidence test, Indiana's double jeopardy clause "is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." Id. This test requires the reviewing court to "identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination." Id. at 832.

With respect to the charges in this case, the jury was instructed as follows:

The Charge for Count I reads as follows: Donald L. Smith being duly sworn upon oath says that James E. True on or about November 14, 2010, at said County of Franklin and State of Indiana, did the[n] or there unlawfully, knowingly, or intentionally, break and enter the dwelling of Stephanie True.
The Charge for Count II reads as follows: Donald L. Smith being duly sworn upon oath says that James E. True on or about November 14, 2010, at said County of Franklin and State of Indiana, did then and there unlawfully, knowingly or intentionally, violate a protective order issued under I.C. 34-26-5, to wit: contacted or directly or indirectly communicated with Stephanie True, at her residence, in violation of an Ex

15

Parte Order for Protection issued by the Franklin County Circuit Court on June 24, 2010, July 13, 2010, and August 23, 2010, in Cause No. 24C01-1006-PO-000023.

The Charge for Count III reads as follows: Donald L. Smith being duly sworn upon oath says that James E. True on or about November 16, 2010, at said County of Franklin and State of Indiana, did then and there unlawfully, knowingly or intentionally, violate a protective order issued under I.C. 34-26-5, to wit: contacted or directly or indirectly communicated with Stephanie True, at her residence, in violation of an Ex Parte Order for Protection issued by the Franklin County Circuit Court on June 24, 2010, July 13, 2010, and August 23, 2010, in Cause No. 24C01-1006-PO-000023.

The Charge for Count IV reads as follows: Donald L. Smith being duly sworn upon oath says that James E. True on or about November 16, 2010, at said County of Franklin and State of Indiana, did then and there unlawfully, knowingly or intentionally, violate a protective order issued under I.C. 34-26-5, to wit: contacted or directly or indirectly communicated with Stephanie True, at the Franklin County Security Center, in violation of an Ex Parte Order for Protection issued by the Franklin County Circuit Court on June 24, 2010, July 13, 2010, and August 23, 2010, in Cause No. 24C01-1006-PO-000023.

Appellant's App. p. 15. True was convicted of Counts I and II, but acquitted of Counts III and IV.

True contends that his convictions violate double jeopardy principles under the actual evidence test because there is a reasonable possibility that the jury relied on True's act of breaking and entering the Rebecca Drive residence on November 15, 2010 to establish that he committed both residential entry and invasion of privacy. The State responds that there is no reasonable possibility that the jury relied on the same facts to support both convictions because True broke and entered the residence twice, once on November 15 and again on November 16. But in light of the jury instruction detailed above, we must disagree with the State. The jury was instructed that Count I alleged that True committed residential entry "on or about November 14." Appellant's App. p. 15.

16

The invasion of privacy charge in Count II was alleged to have occurred on the same date, that is, "on or about November 14." Id. The invasion of privacy charge in Count III was alleged to have occurred "on or about November 16." Id. The charges in Counts II and III were otherwise identical. The jury convicted True of Counts I and II, but acquitted him of Count III.

Because True was charged with invasion of privacy for both of his two entries onto the property, but acquitted of the charge occurring "on or about November 16," it is apparent that his invasion of privacy conviction was based on his first entry onto the property, which occurred on the same date alleged in the residential entry count. In light of these facts, we conclude that it was reasonably possible that the jury based both of its guilty findings on the evidence concerning True's first entry onto the property, which occurred on November 15, 2010.

We also find it telling that, in response to defense counsel's request for clarification of when and where the alleged protective order violations occurred, the prosecutor filed a memorandum stating "[t]hat the alleged violation of the Protective Order in Count 2 was to have occurred on November 14, 2010 or November 15, 2010, where it is alleged that the Defendant broke and entered the residence of Stephanie True. *The State is alleging that this is also a violation of the Protective Order."* Appellant's App. p. 10 (emphasis added). Although it does not appear that the jury was provided with or instructed on this memorandum, we believe that it sheds light on the State's theory of the case, specifically, that Counts I and II were based on the same evidentiary facts, i.e., True's act of breaking and entering the residence on November 15, 2010.

17

Next, the State argues that it was not required to show that True actually entered the residence in order to support the invasion of privacy conviction. Specifically, the State notes that the protective order required True to stay away from Stephanie's residence, and that True admitted that he went to Stephanie's residence. But the jury was instructed that True was charged in Count II with violating the protective order by contacting or directly or indirectly communicating with Stephanie at her residence, and not simply for going to her residence.

The State does not assert that True's presence on the property while Stephanie was not there, standing alone, could support a conclusion that True communicated in any way with Stephanie. The State does, however, acknowledge that True's act of breaking and entering the residence could be viewed by the jury as a form of indirect communication designed to harass and annoy Stephanie. Although it may be possible that the jury relied solely on True's presence at the property to support the invasion of privacy conviction and his subsequent act of breaking and entering on the same date to support the residential entry conviction, the standard to be applied is whether there is a reasonable possibility that the jury used the same evidentiary facts to support two convictions. Under these facts and circumstances, and in light of the jury instruction providing that Count II was based on an act of direct or indirect communication as opposed to True's mere presence on the property, we conclude that there is a reasonable possibility that the jury relied on True's act of breaking and entering to support both the invasion of privacy conviction and the residential entry conviction.

18

For all of these reasons, we conclude that True's invasion of privacy conviction cannot withstand double jeopardy analysis under the actual evidence test. We therefore remand to the trial court with instructions to vacate True's conviction and sentence for invasion of privacy.

**Conclusion**

True has not established that his trial counsel was ineffective for failing to tender a jury instruction on mistake of fact, and the evidence was sufficient to support True's Class D felony residential entry conviction. However, True's conviction for invasion of privacy violates Indiana's prohibition against double jeopardy and must therefore be vacated.

Affirmed in part, reversed in part, and remanded with instructions.

ROBB, C.J., and BAILEY, J., concur.

19