**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELIZABETH A. GABIG**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ETHEL S. TAYLOR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1201-CR-19 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
The Honorable Amy J. Barbar, Magistrate
Cause No. 49G22-1109-FB-63439

**September 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Ethel S. Taylor appeals her conviction for Class C felony battery.[1]  Specifically, Taylor contends that the evidence is insufficient to support her conviction because the State failed to prove that she had the necessary mens rea to commit Class C felony battery.  We affirm.

## FACTS AND PROCEDURAL HISTORY

During the fall of 2011, Taylor and Cecil Miller were involved in a romantic relationship.  On the evening of September 5, 2011, Taylor, Miller, and Miller's long-time friend, Daniel Ivy, were celebrating Labor Day with Taylor's daughter, Barbara Taylor, at Barbara's home.  While the group enjoyed food and alcoholic beverages together, Barbara and Ivy began dancing.  At some point, Miller upset Taylor by jokingly asking Barbara for a "lap dance."  Tr. p. 46.  Upon hearing Miller's request, Taylor became angry and "backhanded" Miller.  Tr. p. 84.  Shortly thereafter, Taylor left Barbara's home.

A few hours later, Taylor returned to Barbara's home.  Barbara and Ivy were inside the home when Taylor returned.  Taylor confronted Miller about his lap dance comment.  A few moments later, Barbara and Ivy heard Miller exclaim "Aaah." Tr. p. 104. Upon coming to check on Taylor and Miller, Barbara and Ivy saw that Miller was bleeding from the neck and that Taylor was standing near Miller, holding a knife.  One of Barbara's neighbors, Walter Thompson, also heard screaming coming from Barbara's home, and, upon coming to investigate the cause of the commotion, saw Miller bleeding from the neck and Taylor standing nearby holding a knife.  Thompson then grabbed Taylor's wrist and made her drop

---

[1]  Ind. Code § 35-42-2-1 (2011).

the knife. Barbara called 911 and reported the incident. When officers from the Indianapolis Metropolitan Police Department arrived, Taylor was taken into custody and Miller was transported to a local hospital for treatment for his injuries.

Upon taking Taylor into custody, the officers read Taylor her *Miranda*[2] rights. Taylor was subsequently transported from the scene and interviewed by Detective Tiffany Woods. Before questioning Taylor, Detective Woods again read Taylor her *Miranda* rights. Taylor signed a waiver of her *Miranda* rights, at which time Detective Woods proceeded to question Taylor about the events that took place at Barbara's home. Taylor told Detective Woods that she and Miller had been arguing. During this argument, Taylor "swung" the knife she was holding at Miller and "cut [Miller] with the knife." Tr. p. 84. Taylor told Detective Woods that she was angry at Miller, that she meant to cut him, and that "she should have just killed him." Tr. p. 86. Taylor also indicated that she did not care that she had cut Miller.

On September 8, 2011, the State charged Taylor with one count of Class B felony aggravated battery. On November 9, 2011, the State amended the charging information to include two counts of Class C felony battery. These additional counts alleged that Taylor committed battery by means of a deadly weapon, *i.e.*, a knife, and that the battery caused serious bodily injury to Miller. Taylor waived her right to a jury trial.

The trial court conducted a bench trial on November 28, 2011, at the conclusion of which the trial court found Taylor not guilty of the Class B felony aggravated battery charge and guilty of one count of Class C felony battery. The trial court did not enter a judgment of

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

conviction on the remaining Class C felony battery charge, finding that it merged with the other Class C felony battery charge. On December 13, 2011, the trial court sentenced Taylor to a term of three years of incarceration, with 198 days to be served in the Department of Correction and 532 days to be served on home detention, followed by one year of probation. This appeal follows.

## DISCUSSION AND DECISION

Taylor contends that the evidence is insufficient to support her conviction for Class C felony battery. Specifically, Taylor claims that the evidence is insufficient to prove that she acted knowingly when she swung her knife at and cut Miller.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction.… The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). Inconsistencies in witness testimony go to the weight and credibility of the testimony, "the resolution of which is within the province of the trier of fact." *Jordan v. State*, 656 N.E.2d 816, 818 (Ind. 1995). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

In order to convict Taylor of Class C felony battery, the State was required to prove that she knowingly or intentionally touched Miller in a rude, insolent, or angry manner by

4

means of a deadly weapon or in a manner causing serious bodily injury to Miller. Indiana Code § 35-42-2-1(a)(3). "A person engages in conduct 'knowingly' if, when [s]he engages in the conduct, [s]he is aware of a high probability that [s]he is doing so." Indiana Code § 35-41-2-2(b) (2011). "A person engages in conduct 'intentionally' if, when [s]he engages in the conduct, it is [her] conscious objective to do so." Indiana Code § 35-41-2-2(a). The trial court, acting as the trier of fact, may resort to reasonable inferences based on examination of the surrounding circumstances to determine the existence of the requisite intent. *White v. State*, 772 N.E.2d 408, 413 (Ind. 2002). Furthermore, "the requisite intent may be presumed from the voluntary commission of the act." *Mishler v. State*, 660 N.E.2d 343, 348 (Ind. Ct. App. 1996).

Here, Taylor was charged with and convicted of Class C felony battery. Taylor does not challenge the sufficiency of the evidence to prove that she touched Miller in a rude, insolent, or angry manner by means of a deadly weapon. Instead, Taylor argues that the evidence is insufficient to prove that she did so "knowingly" or "intentionally." We cannot agree.

The record demonstrates that after waiving her *Miranda* rights, Taylor told Detective Woods that she and Miller had been arguing. During this argument, Taylor "swung" the knife she was holding at Miller and "cut [Miller] with the knife." Tr. p. 84. Taylor told Detective Woods that she was angry at Miller, that she meant to cut him, and that "she should have just killed him." Tr. p. 86. Taylor also indicated that she did not care that she had cut Miller. Based on this evidence, the trial court could reasonably infer that Taylor acted

knowingly, if not intentionally, when she swung her knife at and cut Miller. *See White*, 772 N.E.2d at 413; *Mishler*, 660 N.E.2d at 348. As such, we conclude that the evidence is sufficient to sustain Taylor's conviction for Class C felony battery. Taylor's argument to the contrary effectively amounts to an invitation for this court to reweigh the evidence, which, again, we will not do. *See Stewart*, 768 N.E.2d at 435.

The judgment of the trial court is affirmed.

ROBB, C.J., and BAKER, J., concur.