## BAUGH *v.* STATE OF INDIANA.

[No. 25,644. Filed March 12, 1929.]

Q. *Austin East*, *Robert G. Miller* and *James W. Blair*, for appellant.

*James M. Ogden*, Attorney-General, and *George W. Hufsmith*, Deputy Attorney-General, for the State.

MARTIN, C. J.—Appellant was found guilty of second degree burglary, under Acts 1927, ch. 201, §3, and sentenced to the Indiana State Prison for not less than one nor more than ten years. The count of the affidavit upon which he was convicted charged that he "did . . . unlawfully in the day time, enter a meeting house and building used as a house of worship . . . known as Johnson's Chapel, belonging to the Cumberland Presbyterian Church, and did, . . . unlawfully and feloniously attempt to commit a felony, to wit: to feloniously steal, take and carry away the personal goods and chattels of said . . . church. . . ." The evidence shows that appellant, under a claim of ownership, sold the pews, chairs and pulpit of an abandoned Presbyterian church in Washington Township, Monroe County, for $110 to the Pentecost church in Bloomington. He

made no secret of the transaction and assisted openly, in broad daylight, in removing the furniture from the old church, which was on a main public road on which people were passing, and in loading it into the purchaser's moving van.

The parents of appellant, William T. and Mary Baugh, both now deceased, in 1896, conveyed by warranty deed to the Cumberland Presbyterian Church of Washington Township, Monroe County, Indiana, one acre of land, thereafter occupied by Johnson's Chapel, in the corner of their farm. The deed contained a provision that the ground should be used for church purposes and for burial purposes and that, should the church cease to exist and should the ground not be used for burial purposes, it should revert to the grantors. One burial was made in the churchyard, but the body so buried had long since been removed and buried elsewhere. No regular church services had been conducted in the building for about ten years, no Presbyterian services of any kind had been conducted for two and a half years, and no services at all had been conducted for more than a year. The building was in a state of delapidation, most of the window lights had been knocked out, one flue was caved in, there were holes in the roof, and the plastering had fallen off. There was no gate to the church yard, which had been fenced in, and the door of the church was nailed up prior to the time of the alleged felony. The rain had beat into the building, the old carpet was rotted, the pigeons roosted there, and the furniture was covered with bird and human defecation, dirt and filth.

Appellant, before selling the furniture, sought the advice of an attorney as to his property rights, both real and personal, in the premises. Appellant's father had filed a suit to quiet his title to the church property and died while the cause was pending. That suit was dismissed after the father's death, when it was discovered

that he had given appellant an unrecorded deed to the property which antedated the quiet-title suit. We are not concerned here with the question of whether there was a reversion of the real property or whether the personal property had been abandoned by the church, and decide nothing with reference to the ownership of either. The defendant testified, and he was not contradicted, that he believed he owned the real estate and had a legal right to the personal property which he sold. Appellant's attorney advised him that he could not see any reason why he should not sell it, that "if it isn't used for church purposes now . . . I cannot conceive of anybody making a big row about somebody else using it for church purposes," that appellant should sell it and "if it should turn out he didn't have a right to sell it . . . you will simply have to hand the money back." The prosecuting witness testified that he never took up with appellant the matter of settling with the church, for the reason that he "wanted to wait the outcome" and that "if it is John's (appellant's) stuff, I want him to have it; if it belongs to the church, we want it." In response to a question as to whether he wanted to settle the title to personal property by using the state instead of a replevin suit, he said, "I don't know. I just took my attorney's advice; he told me what to do. I am like he (appellant) was by selling the seats—he took the attorney's advice and that is what I did." This prosecuting witness, who claimed to be a church trustee, testified that he had brought a replevin suit for the furniture before he filed the affidavit against appellant, that the civil case had been filed three months but that he "hadn't had time" to get it set down for trial.

It appears to us that this controversy is properly one for determination by a civil action but not one for criminal prosecution. Certainly, the evidence is not sufficient to sustain the verdict of guilty.

The building which appellant is charged with entering unlawfully was not shown to be used as a house of worship as alleged in the affidavit and it appears that appellant had fair reason to believe that he owned not only the building, but the personal property therein contained. No intent to commit a crime is shown by the evidence nor can be inferred therefrom. On the contrary, the undisputed evidence negatives any intent on the part of appellant, in selling and removing the property in question, to commit larceny or to attempt to commit a felony. One who takes property under a fair color or claim of title and in the honest belief of ownership and of a right to its possession is not guilty of larceny, although his claim is based on a misconception of the law or his rights under it, as, in such a case, the felonious intent is lacking (36 C. J. 764; 17 R. C. L. 26), and he cannot be guilty of burglary or the felonious attempt to commit burglary when he enters an abandoned church building, to which he believes he holds the legal title, to remove such personal property.

It follows that the court erred in overruling appellant's motion for a new trial, and the judgment is reversed, with direction to sustain such motion.