

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 24S-CR-55



FILED

Feb 15 2024, 2:57 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## Jennifer R. Teising,
*Appellant (Defendant below),*

—v—

## State of Indiana,
*Appellee (Plaintiff below).*

Argued: June 23, 2023 | Decided: February 15, 2024

Appeal from the Tippecanoe Superior Court 5
No. 79D05-2105-F6-368
The Honorable Kristen E. McVey, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-CR-548

**Opinion by Justice Molter**

Chief Justice Rush and Justices Massa, Slaughter, and Goff concur.

**Molter, Justice.**

Article 6, Section 6 of the Indiana Constitution requires that all township officers "shall reside within their respective . . . townships," and they forfeit their position if they don't. Defendant Jennifer Teising resided within West Lafayette's Wabash Township when she was elected township trustee in November 2018. But after the COVID-19 pandemic spread to Indiana, she sold her home, bought a travel trailer, and left for a nomadic life while continuing to work remotely. Sometimes she stayed in Florida, sometimes she stayed with friends in Anderson, Indiana, and sometimes she traveled. But she hardly ever stayed in Wabash Township. And despite growing controversy over her residency, she refused to resign.

Usually, the State resolves residency disputes like this through a civil *quo warranto* action to remove the official from office. But here it chose stronger medicine. It convened a grand jury, which indicted Teising for twenty-one counts of theft on the theory that by spending most of her time outside the township, she forfeited her office. And once she forfeited her office, none of the twenty-one paychecks she kept collecting belonged to her even though she continued working as the trustee remotely. After the parties agreed to a bench trial, the trial court convicted her on all counts.

A unanimous Court of Appeals panel vacated the convictions in a published opinion. The panel concluded Teising never stopped complying with the constitutional residency requirement because she never established a legal domicile somewhere else, and she therefore didn't forfeit her office. We now grant transfer, and we too conclude Teising's convictions must be vacated, but for a different reason. We don't need to reach the constitutional residency question because, either way, the State didn't introduce evidence that Teising acted with the criminal intent required for theft—evidence that she believed she wasn't supposed to continue collecting her salary for the work she kept performing remotely. And without criminal intent, the only available remedies were civil, such as a *quo warranto* action to remove Teising from office or a conversion claim to recover allegedly misappropriated money.

# Facts and Procedural History

Teising was elected trustee of Wabash Township in November 2018, and she took office the following January for a four-year term. Ind. Code § 36-6-4-2(c). At that time, she owned a house in Wabash Township on Princess Drive.

About a year later, Teising briefly ran for county commissioner before withdrawing from the race and saying she was "probably going to . . . sell [her] house, resign [as trustee], and move to Florida." Tr. Vol. 2 at 238. She asked the Wabash Township Board President, Michelle Wietbrock, whether Wietbrock would replace her after she resigned. But when Wietbrock declined, Teising changed her mind and decided not to resign.

Teising continued waffling after the COVID-19 pandemic spread to Indiana and the first lockdowns were put in place. She again said she planned to sell her house, resign as trustee, and move away. This time, she did sell her house, moving some of her things into her mother's home in Vincennes and the rest into her ex-boyfriend's home on Knox Drive in Wabash Township. She also changed both her BMV and voter registration address to that Knox Drive address. And she bought a truck and recreational travel trailer.

Even though Teising began to use the Knox Drive home as her personal address, cell phone records reflect she rarely stayed there. From June 17, 2020 through March 19, 2021, Teising spent only twenty-seven overnights there and seven overnights at another address in Lafayette. She spent the other 241 days traveling the country on trips to Minnesota, Colorado, and Florida. She also visited other cities in Indiana. During her travels, Teising often stayed with friends in Anderson, Indiana who considered Teising part of their COVID-19 "bubble." Tr. Vol. 3 at 106.

Throughout these travels, Teising continued working remotely as trustee. Teising's office manager, Tricia Fultz, kept the office open and continued working there in person. Teising maintained access to her trustee email account, and Fultz scanned and uploaded documents that came into the office so Teising could view them remotely. Fultz would also send Teising pictures of important emails and documents via

cellphone so Teising could review them immediately. The Indiana State Police determined that from June 1, 2020 through January 11, 2021, Teising contacted Fultz's cellphone more often than any other phone number.

Teising maintained she was complying with the requirements of her office while working remotely. In November 2020, Wietbrock informed Teising that township residents and elected officials had begun to express concerns about her residency. In her email response, Teising said: "I have complied with the requirements of the office." Ex. Vol. 2 at 75. And on December 22, 2020, the *Lafayette Journal & Courier* published a story about Teising and her travels outside of Wabash Township. Teising responded to the *Journal & Courier*'s request for comment and said that the Knox Drive address was her residence. She also stated: "I have definitely abided by the law. I've done all the requirements of my office, and I'm doing the job of my office." App. Vol. II at 136.

Her responses did not quell the controversy, and a grand jury indicted her on twenty-one counts of theft. The indictment alleged that Teising no longer resided within Wabash Township, so she forfeited her office and the right to continue collecting her salary. Thus, the twenty-one paychecks she collected after she allegedly moved away constituted theft.

Teising filed pre-trial motions for a change of venue and the appointment of a special prosecutor. But the trial court denied both motions. After Teising waived her right to a jury trial, the court conducted a bench trial on December 13 through December 15, 2021.

The trial court then found Teising guilty of all twenty-one theft counts. It concluded that "upon the Defendant's move out of Wabash Township in June 2020 to live a nomadic RV lifestyle, she ceased to . . . make her 'true, permanent and fixed' home in Wabash Township, West Lafayette, Indiana and forfeited the office of Township Trustee." *Id.* at 26. And "[u]pon forfeiture of the office of Wabash Township Trustee, the Defendant's continued collection of her salary constituted the crime of Theft." *Id.* The court then imposed an aggregate 1,095-day sentence with 847 days suspended, leaving 124 days to be served in the Tippecanoe County Jail and 124 days to be served in community corrections.

Teising appealed her convictions, and her sentence was stayed pending appeal. *See Teising v. State*, 201 N.E.3d 212 (Ind. Ct. App. 2022). Applying Indiana Code Chapter 3-5-5, which establishes statutory residency requirements, a unanimous Court of Appeals panel agreed with Teising and reversed her convictions. The panel reasoned that "Teising could not lose her residency in Wabash Township until she established a new residence elsewhere." *Id.* at 219. And the trial court erred when it found Teising guilty of theft because "the State failed to present sufficient evidence that Teising intended to abandon her Wabash Township domicile and establish a new residence" outside the township. *Id.* at 220.

The State petitioned for transfer to this Court, which we now grant through a separate order, thereby vacating the Court of Appeals opinion under Appellate Rule 58(A).

## Standard of Review

The appellate standard of review for sufficiency of the evidence challenges is well settled. "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Therefore, the "reviewing court does not reweigh the evidence or judge the credibility of the witnesses," and it leaves those determinations to the fact-finder. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the evidence most favorable to the trial court's ruling and will affirm a defendant's conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000).

## Discussion and Decision

Teising argues we should vacate her convictions for many reasons which all relate to two overarching points. First, she says she never stopped residing within Wabash Township, so she never forfeited her office. And second, even if she did forfeit her office, the State's remedy

was to remove her from office through a civil *quo warranto* action, not to convict her of theft.

Her first point requires interpreting and applying Article 6, Section 6's residency requirement, but the "longstanding principle of constitutional avoidance . . . weighs against deciding constitutional questions not absolutely necessary to a merits disposition." *Ind. Land Tr. Co. v. XL Inv. Props. LLC*, 155 N.E.3d 1177, 1182 (Ind. 2020) (quotations omitted). And here, we don't need to decide the constitutional residency question because we agree with Teising's second point.

The State's theory of the case is that Teising stopped residing in the township, so she automatically forfeited her position under Indiana Code Section 36-6-4-2(b); and once she forfeited her position, the twenty-one paychecks she kept collecting did not rightfully belong to her. But Teising argues the State skipped a step by charging her with a crime before succeeding on a civil *quo warranto* action to remove her from office. Because without first being ejected from office, she didn't know the salary she received while remotely performing her duties didn't belong to her.

For the most part, we agree with Teising, although we think the State frames the issue better. While Teising views this as a constitutional question about adequate notice and the limits of prosecutorial discretion, we agree with the State that the question is much simpler: "Whether sufficient evidence supports Defendant's convictions for theft." Appellee's Br. at 8.[1] And because there was no evidence Teising believed the paychecks she received did not belong to her, her theft convictions must be vacated.

---

[1] *See also* Appellee's Br. at 32 (arguing Teising's claim that she lacked sufficient notice that abandoning her residence could subject her to theft charges "should only be considered as part of her sufficiency argument and not as a separate constitutional vagueness claim"); Resp. to Trans. at 16 ("Nearly every crime contained in the Indiana Code requires a degree of intent and is something the State regularly must prove in criminal cases. The State never makes clear why proving intent for purposes of committing theft under these circumstances goes against public policy.").

# I. The State did not introduce evidence of criminal intent.

The theft statute underlying Teising's convictions provided: "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft . . . ." I.C. § 35-43-4-2 (2021). It has long been settled that "[t]he taking of property of another under a good faith claim of title or right to possession, or under circumstances consistent with honest conduct, is not larceny [(i.e., theft)], although the party charged with the crime might have been mistaken in [their] belief." *Roark v. State*, 130 N.E.2d 326, 328 (Ind. 1955); *see generally* 1 Subst. Crim. L. § 5.6(d) (3d ed.) (explaining "the crime of [theft] is not committed if the defendant, because of a mistaken understanding[,] . . . believed that the property taken belonged to him").[2] That is because "[t]he intent to steal property and a [bona fide] claim of right to take it are incompatible." *Roark*, 130 N.E.2d at 328. And that is so whether the defendant's mistaken belief about ownership is based on a factual misunderstanding or a misunderstanding of the law as it relates to property ownership. *Baugh v. State*, 165 N.E. 434, 435 (Ind. 1929); *accord* Model Penal Code § 2.04(1)(a) ("Ignorance or mistake as to a matter of fact or law is a defense if . . . the ignorance or mistake negatives the purpose, knowledge, belief, recklessness or negligence required to establish a material element of the

---

[2] *See also generally* 27 Ind. Law Encyc. Theft and Related Offenses § 2 (2023) ("A person who takes the property of another under a good faith but mistaken claim of ownership of the property does not commit theft by such action, since the required intent to exert unauthorized control over another's property is absent."); 3 Subst. Crim. L. § 19.5(a) (3d ed.) (explaining that "[o]ne may take the property of another honestly but mistakenly believing . . . that it is his own property" and in that event "he lacks the intent to steal required for larceny, even though his mistaken but honest belief was unreasonable" (footnote omitted)); 50 Am. Jur. 2d Larceny § 31 (2024) ("Because larceny is a specific intent crime, the State must show that the defendant acted with the subjective desire or knowledge that his actions constituted stealing. The intent to steal or animus furandi, as an element of theft by larceny, is the intent, without a good faith claim of right, to permanently deprive the owner of possession of personal property." (footnotes omitted)); 52B C.J.S. Larceny § 184 (2023) ("It is also for the jury to determine whether the taking has been done with a felonious intent . . . or under a mistaken claim of right made in good faith . . . .").

offense . . . .”).

So, for example, a car dealer cannot be convicted of theft if they do not realize the car they are selling was stolen, or someone else has a superior title for whatever reason. *Pierce v. State*, 315 N.E.2d 376, 379 (Ind. Ct. App. 1974). To be sure, the State may rely on circumstantial evidence to prove the dealer *did* in fact know the car belonged to someone else. *Fortson v. State*, 919 N.E.2d 1136, 1139 (Ind. 2010) (explaining “knowledge that property is stolen may be inferred from the circumstances surrounding the possession”). But one way or another, the State must prove the defendant knew the property wasn’t theirs to secure a theft conviction.

Here, there is no evidence Teising believed she was no longer entitled to continue collecting her salary for the work she kept performing remotely. The trial court’s findings of fact and conclusions of law do not conclude she believed the money she collected wasn’t hers. The State did not point to any such evidence in its briefing or in response to our questions at oral argument. And our own review of the trial transcript didn’t reveal any such evidence either. In fact, the only evidence in the record on this point suggests Teising believed she did have the right to continue collecting her salary. In both her November 2020 email to Wietbrock, and her December 2020 comments to the *Journal & Courier*, Teising claimed she never stopped fulfilling the requirements of her office.

Instead, the State rests its case entirely on the fact that Teising was aware of both the requirement to reside within the township and her own nomadic lifestyle. And, the State argues, that lifestyle produced a chain of legal consequences: by leaving the township indefinitely, she stopped residing in the township as a matter of law; then by not complying with the constitutional requirement to reside within the township, she forfeited her office; and then by forfeiting her office, her paychecks became ill-gotten gains. But even if we assume Teising stopped residing in the township and therefore forfeited her office as a matter of law (questions we do not decide), the State didn’t prove Teising knew she forfeited her office, nor, more importantly, that she knew her paychecks had become ill-gotten gains. And without knowing she wasn’t supposed to be

receiving the paychecks, Teising could not have had the necessary criminal intent.

## II. Without criminal intent, this is a dispute for the civil law, not the criminal law.

The State views this differently. It argues that vacating Teising's theft convictions because there is no evidence—direct or circumstantial—that she knew she wasn't supposed to continue receiving her salary would allow her to prevail on an improper "mistake of law" defense. Oral Argument at 4:47–8:10.

> A longstanding legal principle presumes that citizens know the law and must obey it—on pain of losing their lives, liberty, or property for noncompliance. Because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. An ancient legal maxim, phrased in the obligatory Latin (ignorantia juris non excusat), admonishes that ignorance of the law is no excuse.

*Bellwether Props., LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d 462, 467 (Ind. 2017) (cleaned up).

But the State maintains the burden to prove Teising's criminal intent, including that when she possessed the allegedly stolen property, she knew it wasn't hers. So this limitation just means Teising can't defend based on her ignorance of the *criminal* law—she can't defend on the basis that she didn't know it was a crime to take other people's things without their permission. But she can defend on the basis that she misunderstood the *civil* law to mean the allegedly stolen property was rightfully hers, because that misunderstanding negates her criminal intent. That a mistake of law can be a proper defense to the criminal intent element of theft is one reason why civil litigation usually doesn't end with anyone going to jail even when a defendant must return money or property that the judge

or jury concludes belonged to the plaintiff all along. *J.G. v. State*, 30 N.E.3d 777, 781 (Ind. Ct. App. 2015) (explaining that "a party to a good faith contract dispute should not be convicted of theft simply because he eventually finds himself on the losing end of the dispute" since he "lack[s] the requisite intent necessary to commit theft").

Our decision in *Baugh v. State*, is a good illustration of how the maxim that "ignorance of the law is no excuse" does not relieve the State of its burden to prove criminal intent, even when the defendant bases their claimed lack of intent on a misunderstanding of the civil law. 165 N.E. at 435. William Baugh transferred one acre of land to the Cumberland Presbyterian Church on the condition that the property would revert back to him if the land was no longer used for a church or burial ground. *Id.* at 434. When more than a year passed without any church services on the property, the building had become dilapidated, and there were no remaining burial plots, he concluded the property had reverted back to him, and he transferred it to his son, John. *Id.* To preclude any doubt, William filed a suit to quiet title, but he died before that case was resolved, and it was dismissed. *Id.*

John concluded from all this that he owned not just the real estate, but also the personal property on it, so he removed the church pews, chairs, and pulpit, and he sold them. *Id.* But before he did that, he checked with his lawyer, who said he couldn't "conceive of anybody making a big row about" John removing the property, and even "if it should turn out [that John] didn't have a right to sell it," he would "simply have to hand the money back." *Id.* at 435 (quotations omitted).

The lawyer guessed wrong. The church trustee filed a civil replevin action, and then let that case languish after persuading the local prosecutor to charge John with burglary for entering the church with the intent to steal the personal property in it. *Id.* at 434, 435. John was convicted and sentenced to between one and ten years in the Indiana State Prison, but our Court vacated the conviction. *Id.* We declined to decide who had the superior legal claim to own the property, explaining it didn't matter. "One who takes property under a fair color or claim of title and in the honest belief of ownership and of a right to its possession is not guilty

of larceny, *although his claim is based on a misconception of the law or his rights under it . . . ."* *Id.* at 435 (emphasis added). John's belief, even if it were based on a mistake of law, negated "any intent . . . in selling and removing the property in question[ ] to commit larceny." *Id.* At bottom, "this controversy [was] properly one for determination by a civil action but not one for criminal prosecution." *Id.*

The same is true here. Under the criminal law, it doesn't make a difference if Teising was mistaken in her belief that she had not forfeited her office. What matters is that she believed she continued to meet the constitutional requirements of her office while working remotely and that she was allowed to continue collecting her salary. Or, more precisely, the State failed to prove she didn't believe that.

So, like in *Baugh*, this is a controversy for the civil law, not the criminal law, no matter how outrageous the State and its constituents may find Teising's conduct. If the State's objective was to oust Teising from office because she no longer resided within the township, its relief was through a civil *quo warranto* action. *Hovanec v. Diaz*, 397 N.E.2d 1249, 1250 (Ind. 1979) ("Historically, quo warranto is the proper remedy to determine the right to an office."). Indeed, that is how the State routinely handles claims that an officeholder has forfeited their position by abandoning their residence. *See, e.g., Relender v. State ex rel. Utz*, 49 N.E. 30, 33 (Ind. 1898); *Mehringer v. State*, 20 Ind. 103, 103 (1863); *State ex rel. Cornwall v. Allen*, 21 Ind. 516, 520 (1863). Or if the goal was to recover money the township thought Teising was not entitled to keep, then the relief was through a civil action for something like a conversion claim. *Allen*, 21 Ind. at 520 (explaining that the expeditious resolution of a *quo warranto* action was in the defendant's best interests "for if he is not rightly in office, he will be liable to the legal officer for the fees of the office"). But the State could not vindicate its interests through the criminal law unless Teising knew the money she was receiving wasn't hers.

That is not to say a civil action is a prerequisite to criminal theft charges based on an officeholder's improper retention of pay, nor that the State could never demonstrate criminal intent without prevailing on a civil claim first. Suppose an officeholder retained funds they knew were paid

improperly after their term expired. Whatever other defenses they might have to a theft charge, it would not seem that a lack of criminal intent would be one of them even if there were no civil claim filed first.

Since the State had no evidence Teising believed the money she received wasn't rightfully hers, the only available remedies were civil.

## Conclusion

For these reasons, we vacate Teising's convictions and sentence.[3]

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.

ATTORNEY FOR APPELLANT
Karen Celestino-Horseman
Austin & Jones, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Andrew A. Kobe
Justin F. Roebel
Angela Sanchez
Office of the Attorney General
Indianapolis, Indiana

---

[3] Teising raised additional issues in her Brief of Appellant, including whether her convictions violated double jeopardy protections, and whether the trial court abused its discretion by declining to appoint a special prosecutor. Because we are vacating her conviction based on the State's failure to prove criminal intent, we need not reach those issues.